[Crim. No. 2293. Second Appellate District, Division Two.—April 14, 1933.]

THE PEOPLE, Appellant, v. W. G. DEAN et al., Respondents.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Appellant.

C. J. Morley and Robert E. O'Neill for Respondents.

ARCHBALD, J., *pro tem.*—Defendants were jointly charged in count I of an information with the crime of grand theft, and in counts II and III thereof with a violation of the Corporate Securities Act. They severally moved to set aside each of said counts on the ground that they were not legally committed, in that the evidence introduced before the committing magistrate failed to show that the offenses charged were committed. The trial court granted the motion of defendant Seidlitz as to all counts and that of defendant Dean as to counts II and III. Plaintiff has appealed from such orders of dismissal.

The evidence taken before the committing magistrate except in so far as the exhibits are concerned, is not before us. The record in the superior court on the matter of the motions is, however, and it appears therefrom that the theory under which count I was framed was that there was a conspiracy to commit the act between the two defendants. The trial

court stated at the hearing that there was no evidence connecting the defendant Seidlitz with the transaction, and appellant concedes that the dismissal of such defendant as to count I was proper.

It was stipulated at the hearing in effect that there was no evidence introduced at the preliminary hearing showing that no permit was issued by the corporation commissioner permitting the securities in question to be sold.

Count I of the information charges the sale of a security to one Walter F. Sagar without permission of the corporation commissioner so to do, and count II alleges a similar sale to one A. R. Greenslit. Section 3 of the Corporate Securities Act (Stats. 1917, p. 673; Deering's Gen. Laws, 1931, vol. 2, pp. 1924, 1928) prohibits the sale of any security by the issuer thereof without a certificate having first been issued by the corporation commissioner permitting the same. Section 6 of the act prohibits anyone from acting as agent or broker without first having secured a certificate from such commissioner authorizing such action. Section 17 makes it unlawful for any company, which includes any corporation, etc., or individual, issuing securities, either directly or indirectly, without such a permit, or contrary to the conditions of a permit if one has been issued, to issue or sell any security; and section 18, so far as material here, provides that "Every officer, agent or employee of any company and every other person who knowingly authorizes, directs or aids in the issue or sale of or issues or executes or sells, or causes or assists in causing to be issued, executed or sold, any security . . . contrary to the provisions of this act . . . is guilty of a public offense" and shall be punished as provided therein. Appellant admits that respondents are not charged either as being issuers of securities involved or as acting as agents or brokers for the issuer, but of violating section 18 of the act in selling a security for which no permit was obtained authorizing the issuance thereof. ▉ It is appellant's contention that having shown the sale of a security coming within the meaning of the act, the burden of negativing the issuance of such a permit was not required of the prosecution to support a commitment, but that the burden was upon defendants to prove the affirmative thereof as a matter of defense.

The general rule of evidence respecting the proof of negative averments is laid down in the case of *Commonwealth* v. *Boyer*, 7 Allen (89 Mass.), 306, at page 307, as follows: "When the defendant is in the first instance shown to have done an act which was unlawful unless he was distinctly authorized to do it, the proof of authority is thrown upon him." In the case of *People* v. *Boo Doo Hong*, 122 Cal. 606 [55 Pac. 402, 403], the defendant was charged with unlawfully practicing medicine without a license. The evidence showed that defendant had been practicing medicine at Red Bluff, "but no evidence was introduced on either side showing, or tending to show, that defendant had or had not a certificate to so practice as required by law". The court instructed the jury that the burden was upon the defendant to establish that he had such certificate, and that if he failed to prove such fact it must be taken as true that he did not have one. Such instruction was challenged and it was urged that the verdict was not justified because in a criminal case the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt; that such presumption continues throughout the trial; that inasmuch as the information charged that defendant had practiced medicine without having a certificate so to do, the burden was upon plaintiff to make such proof, and that not having done so the defendant should have been acquitted. In regard to such contention the Supreme Court said: "The general rule is undoubtedly as above stated, but there is a well recognized exception to the rule where there is a negative averment of a fact which is peculiarly within the knowledge of the defendant. . . . We think the rule upon the subject generally recognized and followed the correct one, and therefore conclude that the court did not err in giving the instruction complained of, and that the verdict was justified by the evidence." Appellant urges that such rule applies in the instant case. Respondents admit the existence of the rule but say that it does not apply to them inasmuch as they did not issue the securities; that the burden was not upon them to obtain the permit and hence the matter of its issuance, not being to them as individuals as in the case of a license to practice medicine, dentistry, etc., it was not a fact peculiarly within the knowledge of either of them. They also urge that as any permit was not issued to them

but to the issuer of the security, the means of proving the fact are as much within the control of plaintiff as of them, in which case the burden is upon the party averring the negative (Jones, Commentaries on Evidence, vol. 2, sec. 494, p. 882).

The security involved in count II appears to have been issued by the "South Vulture Gold Mining Co., Ltd., Trustees of a Common Law Estate", and is for "5000 equities" of the "normal par value of $1.00 each". The signature on the security appears as follows: "South Vulture Gold Mining Co., Ltd., Trustees of a Trust Estate Harry J. Mumma, Vice President Wm. G. Dean Secretary". In the lower left-hand corner appears a gilt seal with the name of the company imprinted thereon, and in the center thereof the words "Trustee's Seal". Apparently preceding the issuance of this security Sagar signed three agreements in writing by which he subscribed the sum of $300, $100 and $100, respectively, payable to the "Treasurer of the Trustees, Harry J. Mumma, upon demand, for the purpose of assisting in completing a fund to furnish tools, supplies and machinery to enable said group of [unemployed] mining workers to make efficient recovery of the gold values in the ores obtained from above named properties", of which the South Vulture Gold Mining Co., Ltd., was purported by the agreements to have obtained control. Such agreements were accepted on behalf of the trustees "by Wm. G. Dean, Secretary of the Board of Trustees". The agreements also provided that Sagar was to receive one per cent of the net profits for each $100 subscribed "from the Net Bullion Returns from the Gold Bar Mine in the Peck Mining District, Yavapai County, Arizona, owned by Mrs. Ray Seidlitz of Los Angeles, which is the first property to be operated by the trustees". It would appear from the little evidence at hand that the subscriptions for the securities issued by the South Vulture Gold Mining Co., Ltd., were taken by such agreements and that when the amount subscribed was paid in full the security was issued and delivered. A similar subscription agreement was signed by A. R. Greenslit in the sum of $500 and accepted by Dean for the trustees.

It would appear from the record and evidence before us that the burden was upon the trustees of the South Vulture Gold Mining Company, Ltd., to secure a permit before the

securities issued or to be issued could be legally sold. Under that situation, was the fact whether they had done so peculiarly within the knowledge of respondents?

Respondents urge that if the permits were granted by the commissioner to them it might be in line with the cases cited involving the practice of medicine, dentistry and optometry, as well as those involving the sale of intoxicating liquors without a license, but it is urged that the rule does not apply where the securities were issued by someone else, who may have obtained the license, as in such case the fact is one "which may or may not be peculiarly within the knowledge of a given defendant", and that the plaintiff can as conveniently obtain such knowledge by going to the office of the corporation commissioner as can the defendant. Possibly so, but the purpose of the act is to put the burden upon one selling a security to see that it can be lawfully sold. It is to prevent imposition on the public, which has the same right to investigate before it buys that one selling a security has before he sells. ■ The law, however, puts the burden of such investigation on the party selling, and it is no excuse if he fails to ascertain if such security cannot in fact be legally sold. He is bound to make such investigation, if the security is not issued by him, before attempting to make a sale thereof, and we may well presume that he did so, as it would not seem reasonable to presume that, knowing the law as he must, he would go ahead with the sale without an independent investigation.

In the case of *Anderson* v. *Board of Dental Examiners,* 27 Cal. App. 336 [149 Pac. 1006, 1007], the petitioner applied for a writ to review the proceedings of such board in the matter of the suspension of his license. He employed one Munn to assist him in his practice and permitted him to use his offices and instruments in the practice of dentistry. It was contended that there was no evidence introduced showing that petitioner "ever knew that Munn was not duly licensed to practice dentistry". As to such contention the court said: "The respondent contends, and we think correctly, that if it be the fact that said Munn was not in the possession of such license to practice the profession of dentistry as would make him an available subject of employment by the petitioner for the purposes for which the evidence shows he was utilized in the latter's offices, or to have

permission to use said offices and the paraphernalia thereof for the practice of dentistry—which the evidence sufficiently shows he did—the duty was cast upon the petitioner to ascertain that fact before taking Munn into his service for such purposes, or permitting him to make use of his offices and appliances for the practice of dentistry, and hence his knowledge of the fact, if it be a fact, is to be assumed.'' It is true the court also held that the board of dental examiners could take judicial knowledge of its own records as to whether such license was issued or not, but it does not appear that the board exercised such right and the case seems to say that the burden of proof was on the petitioner by reason of his duty to investigate. We think the same rule should be applied to one who sells a security coming within the meaning of the Corporate Securities Act. Otherwise, by going blindly ahead when trouble arises he forces the state to prove a negative which it is *his duty* to affirmatively ascertain before he can lawfully sell the security. The state in its prosecutions under the act is not putting the wronged victim back in the position he was before the unlawful sale was made. That wrong is still not righted, even after a successful prosecution, and we are not willing to hold that the party whose duty it was to save all that loss and damage can, by closing his eyes to facts it was his duty to ascertain before damaging some innocent third person, force the prosecuting officer to do something he should himself have done and to prove something he is bound to know under the law, if he acts legally.

A great deal of argument is made as to the accessibility of the records of the corporation commissioner to the plaintiff when a case is tried in Los Angeles, where the commissioner maintains an office. To prove the negative alleged, regardless of the accessibility of the records, requires a search by the commissioner of his entire records in order to ascertain if as a matter of fact a permit was not issued, and then to prove the result of such search by himself or his deputies, all of which costs the state considerable money in loss of time and inconvenience to the office which it can ill afford to bear and which it would seem it should not be compelled to suffer where a defendant himself has or should have peculiar knowledge as to the fact.

█ At the hearing on the motion to dismiss the district attorney stated that the theory under which the prosecution had proceeded as to defendant Seidlitz was that of conspiracy between the two defendants, and that "we felt that if the defendant Seidlitz was at all culpable under the second two [counts of the information] she was under the first one"; so it would seem that as to that defendant, under such admission, all three counts were properly dismissed, regardless of the decision on the point raised by such defendant.

The order granting the motion to dismiss as to respondent Seidlitz is affirmed. As to respondent Dean it is reversed as to counts II and III.

Works, P. J., and Stephens, J., concurred.