[Crim. No. 4750. Second Dist., Div. Two. May 19, 1952.]

THE PEOPLE, Respondent, v. JAMES LANE KENDALL, Appellant.

William W. Larsen and John Marshall for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was indicted on five counts of abortion. At the first trial one count was dismissed and the jury failed to agree on the others, hence a mistrial was ordered. At the second trial the jury brought in verdicts of not guilty as to two counts, but found the defendant guilty on the remaining two (counts II and III). Defendant appeals from the ensuing judgment and the order denying his motion for a new trial.

In July, 1950, having missed her regular menstrual periods, Jo Anne, accompanied by a friend, visited defendant's office. Defendant examined her and told her she was pregnant. Arrangements were then made for her to return in two weeks at which time defendant would perform an operation. She returned at the appointed time in August. She was in good health. At defendant's request she assumed a reclining position on a table. While in this position defendant again examined her with the aid of an instrument known as a vaginal speculum, commonly called a "duck bill." He then inserted a tube into her vagina,

removing it shortly thereafter. There was no nurse present. When the procedure, which had taken 15 or 20 minutes, was concluded, Jo Anne dressed, paid defendant $100 and departed for home. Feeling ill, she went to bed. During the ensuing period she experienced pain. About 3 or 4 o'clock the next morning she passed a fetus. When this took place she noticed the odor of pine oil which she described as similar to the odor of a liquid contained in a bottle found in defendant's home.

On February 1, 1951, Norma Jean, a married woman with three children, telephoned defendant stating she would like to speak to him about a personal matter. Thereafter, accompanied by her husband and a friend, she went to defendant's office and had a personal interview with him. When he was advised she had missed two periods and that her next period was due about the middle of February, defendant told her it would be better to treat her at that time. An appointment was made for February 12. On that date she appeared at defendant's office around 9 a. m. She was in good health. After waiting a brief period, defendant came in and asked her to undress from the waist down in an adjoining room. She took a position on a table in this room and defendant examined her. He left the room, shortly returning with some instruments. He first inserted a duck bill in her vagina, then a tube, and she felt a cramp. Defendant gave her a shot in the hip which he said was penicillin. There was no nurse present during the operation. Before she left, her husband, who had been waiting in the other room, paid defendant $100.

While in defendant's office Norma Jean had smelled nothing unusual, but when she arrived home she noticed a strong odor of pine, the same odor given off by the contents of the bottle found in defendant's bathroom. She passed a fetus in the bathroom of her home about 9:30 that evening.

These operations were performed at defendant's office on South Adams Street, in Glendale, on the front door of which appears "Dr. J. Lane Kendall, Osteopath." The records, however, of the State Board of Osteopathic Examiners failed to show that any license had been issued to defendant for the years 1950 and 1951. Defendant's residence was located directly behind the office. Officers searched defendant's home and found one bottle of pine oil in the bathroom cupboard, a vaginal speculum in a hall linen closet, and a soft rubber catheter and a Luer syringe. Jo Anne and Norma Jean

recalled seeing such articles in defendant's possession at the time of their respective operations.

About a week before the grand jury indicted defendant he went to Jo Anne's place of employment and told her he had been arrested; that if anyone came to see her to be careful. After the indictment defendant, accompanied by his wife, again contacted her and asked her to change the story she had told the grand jury. He explained "there was a way to do it without its being perjury."

A few days before the grand jury hearing defendant called the husband of Norma Jean on the telephone and told him he could not have him and his wife testify before the grand jury.

Defendant's wife contacted two witnesses in the case concerning their testimony. She visited Jo Anne at her place of employment and Gayle (who was the alleged victim in count I on which defendant was acquitted) at her home. Mrs. Kendall's version of these meetings was that she merely told the women she and defendant had heard there was a man in the abortion business who was holding himself out as Dr. Lane Kendall; that telephone calls had been received at defendant's office from this man's patients who were not known to defendant; that they had had the matter investigated; that the women were making a mistake in connecting defendant with their abortions; and that they had gone to the alleged impostor.

According to Gayle's mother, who was present at the conversation between Mrs. Kendall and Gayle, Mrs. Kendall stated she would pay all expenses of a month or six weeks if Gayle would leave the state. Jo Anne's version of her conversation with defendant's wife was that if she would leave the state and stay away until after the trial, Mrs. Kendall would pay her expenses. Also, she told Jo Anne she wanted her to testify that another Dr. Kendall committed the abortion rather than defendant.

According to the People's medical expert, pine oil may be introduced into a female's womb with the aid of the instruments found in defendant's possession, thereby terminating a pregnancy.

Defendant sought to establish an alibi. He did not, however, testify.

As grounds for reversal defendant contends the testimony of the abortees was not corroborated; the court erred in the admission and rejection of evidence; the instructions were

incorrect; the court unduly restricted the cross-examination of the inspector of the State Board of Osteopathic Examiners; and too much latitude was allowed in the cross-examination of Mrs. Kendall. None of these grounds is well founded.

In order to sustain a conviction of the crime of abortion the testimony of the woman upon whom the abortion has been performed must be corroborated by other evidence. (Pen. Code, § 1108.) In determining the sufficiency of such other evidence there are certain established legal principles that serve as guides. It must "tend to connect the defendant with the offense," but "So long as corroborating evidence creates more than a suspicion of guilt, it is sufficient even though it 'be slight and, when standing by itself' entitled to but little consideration." (*People* v. *Wilson*, 25 Cal.2d 341, 347 [153 P.2d 720]; *People* v. *Collins*, 80 Cal.App.2d 526, 527, 534 [182 P.2d 585]; *People* v. *Malone*, 82 Cal.App.2d 54, 61 [185 P.2d 870]; *People* v. *Allen*, 104 Cal.App.2d 402, 411 [231 P.2d 896].) The necessary corroboration may consist of inferences from the circumstances surrounding the criminal transaction. (*People* v. *Wilson*, *supra*.) It need not establish the precise facts testified to by the witness whose testimony it supports. (Ibid.) It is not necessary that the corroborative evidence prove the defendant is guilty of the offense. (*People* v. *Allen*, *supra*, p. 413.) Such evidence is sufficient if it connects the defendant with the commission of the crime in such a way as reasonably to satisfy the trier of fact that the witness whose testimony it supports is telling the truth. (*People* v. *Trujillo*, 32 Cal.2d 105, 111 [194 P.2d 681]; *People* v. *Henderson*, 34 Cal.2d 340, 342-343 [209 P.2d 785]; *Peopel* v. *Griffin*, 98 Cal.App.2d 1, 26 [219 P.2d 519].) The testimony of the woman upon whom the abortion is performed as to her good health does not require special corroboration. (*People* v. *Malone*, *supra*, p. 61.) "*Whether the corroborating evidence by itself is as compatible with innocence as it is with guilt, is a question for the trier of fact, not for the reviewing court.*" (Italics added.) (*People* v. *Estes*, 99 Cal.App.2d 745, 747 [222 P.2d 454]; *People* v. *Allen*, *supra*.) Applying these principles, it cannot be said as a matter of law that the corroborative evidence in this case is insufficient. It is established that the "Testimony relating to one count may be considered by the jury in corroboration of the testimony of the woman upon whom an

abortion was alleged to have been performed in another count." (*People* v. *Malone, supra,* p. 63; *People* v. *Collins, supra; People* v. *Allen, supra.*) ▮ Thus the testimony of Jo Anne and Norma Jean was mutually corroborative. One of the reasons for this is that the testimony of two people who independently went through the same procedure tends to establish the credence of both. The testimony of these women described in detail the same premises, the same instruments, and the same liquid abortifacient. The evidence of these women was further corroborated by the testimony of the officer relative to finding, in defendant's living quarters, equipment and a drug which could be used in performing an abortion. They testified to seeing such instruments in defendant's possession and described his use of them. The possession of such items by defendant served to corroborate their story. (*People* v. *Raffington,* 98 Cal.App.2d 455, 461 [220 P.2d 967].) ▮ Their testimony as to the use of the instruments and medicine "does not need special corroboration." (*People* v. *Wilson, supra,* p. 347.) ▮ In this connection it must be remembered each woman testified that defendant used a liquid in the operation on her, and that the odor of pine was noticeable when the desired result was produced. A bottle of pine oil was found in defendant's premises. This is a corroborating circumstance. It points not only to the truth of the witnesses' testimony, but tends to establish by independent evidence one of the vital ingredients of defendant's method.

Defendant, however, contends the court erred in admitting in evidence the bottle of pine oil, the speculum, catheter, and syringe because (1) they were not found "on the premises where the alleged acts took place, but in a house next door," and (2) the discovery of these items was "too remote from the time of the alleged acts." Neither objection is well founded. ▮ The fact that such items were found in defendant's home rather than in his office does not affect their efficacy as evidence since they were actually in his possession and since his home is directly behind and immediately adjacent to his office. Since defendant did not have a license to practice his profession he may well have considered it a desirable precaution to remove such items from his office to his nearby residence after each operation. As to the pine oil, a sufficient foundation was laid to establish that this was the same bottle of pine oil which was found in defendant's home. The fact that this bottle was found some time

after the commission of the alleged offense is immaterial for defendant either used pine oil from this particular bottle or he used it from a similar bottle. The presence of a bottle of pine oil in defendant's possession connected him with the crimes charged and corroborated the testimony of the women that defendant used pine oil in committing the abortions.

The fact that some two and a half months intervened between the operation on Norma Jean and the discovery of the instruments and pine oil in defendant's possession does not render them inadmissible in evidence on the ground of remoteness. In *People* v. *Pollum,* 97 Cal.App.2d 173 [217 P.2d 463], which is an abortion case, the surgical instruments in question were found in defendant's office "more than a year after the times of the alleged offenses." (P. 178.) In commenting on their competency, the court said (p. 179): "They were suitable for use in the operations described by the witnesses and this was sufficient to justify their admission." (Citing cases.)

Defendant suggests that the bottle of pine oil should not have been admitted in evidence because it "is a common cleaning and disinfectant substance." The answer to this is that the People's expert testified pine oil could be employed to terminate a pregnancy. He further suggests "Its possession is as consistent with innocence as it is with guilt." The answer to this proposition is that whether such evidence is as compatible with innocence as with guilt was a question for the jury and not for this court (*People* v. *Allen, supra,* p. 412) and apparently the jury impliedly found against defendant on this issue. Defendant further challenges the admissibility of the pine oil in evidence on the ground that "None of the complaining witnesses in any way connected" him "with the use of Pine Oil." He bases this upon the testimony that they did not smell the odor of such a substance when the operation was in process. Both Jo Anne and Norma Jean testified he inserted a tube in their vagina. This may well account for their failure to detect the odor at that time. They did, however, smell it after the fetus had passed. Defendant's final challenge to the admissibility of the pine oil is that it was not in any way connected with the commission of any of the charges against him. The simple answer to this is that the jury, on substantial evidence, found to the contrary.

Additional corroboration is furnished by defendant's telephone call to the husband of Norma Jean, saying he

could not have him and his wife testifying before the grand jury. Defendant, however, argues this evidence was not admissible because (1) no foundation was laid to show the witness could recognize defendant's voice over the telephone; (2) the statement attributed to defendant was not relevant to the issues in this case for the reason there was no showing the conversation involved the grand jury action in this case, and (3) the statement attributed to defendant is as consistent with innocence as it is with guilt. There is no merit in any of these arguments. ▇ On the question of foundation, the record is clear that Norma Jean's husband talked to defendant on previous occasions on the telephone and that he recognized defendant's voice on this occasion. ▇ The record is likewise clear that the conversation was about his wife, on whom defendant is charged with having committed an abortion. The conversation took place "a few days before" the grand jury hearing, which resulted in defendant's indictment and at which defendant did not want him and his wife to testify. There can be no doubt about the relevancy of this telephone conversation. Whether it was as consistent with innocence as it was with guilt was for the jury's determination, which is binding on appeal. (*People* v. *Ramsey*, 83 Cal.App.2d 707, 718 [189 P.2d 802].) The jury could reasonably have inferred that such statement to Norma Jean's husband served to connect him with the abortion which she testified defendant committed on her, and that it showed a consciousness of guilt.

▇ Efforts to suppress testimony against himself indicate a consciousness of guilt on the part of a defendant, and evidence thereof is admissible against him. (*People* v. *Moore*, 70 Cal.App.2d 158, 163 [160 P.2d 857].) ▇ Generally, evidence of the attempt of third persons to suppress testimony is inadmissible against a defendant where the effort did not occur in his presence. (*Ibid.*) However, if the defendant has authorized the attempt of the third person to suppress testimony, evidence of such conduct is admissible against the defendant. (*Ibid.*) ▇ Of course it may be, and ordinarily must be, proved by circumstantial evidence that the third person who approached the prosecuting witness in an attempt to suppress his testimony was acting on behalf of the defendant in so doing, and was authorized by him to do so. (*Ibid.*; *People* v. *Burke*, 18 Cal. App. 72, 91-93 [122 P. 435].) In the case at bar the jury could reasonably infer from the fact that Mrs. Kendall had

been with her husband on one occasion when he sought to have one of the witnesses change her story, that she was acting on behalf of defendant, and was authorized to do so, in offering to pay the expenses of two witnesses if they would leave the state and not testify.

Defendant claims, however, the court permitted too much latitude in the cross-examination of Mrs. Kendall because she was questioned about contacting those witnesses. Defendant did not take the stand but relied upon his alibi witnesses, whose testimony was reinforced by that of his wife, to establish his defense. ■■■ Mrs. Kendall testified to defendant's being elsewhere at the various times in question, and, as bearing upon her bias and interest and affecting her credibility, it was proper to show she had contacted the witnesses to persuade them to change their testimony or absent themselves from the state. She admitted seeing the witnesses but claimed she merely told them they were making a mistake; that some other person posing as defendant had committed the abortions. No other evidence was offered by defendant to prove this latter claim, and in rebuttal these two witnesses told of Mrs. Kendall's efforts to suppress their testimony.

The testimony of each prosecutrix with respect to the condition of her health was sufficiently corroborated from the surrounding circumstances. Neither of these women appear to have made any complaint about their physical condition except their pregnancy. Jo Anne had been working and was still at work when defendant and his wife contacted her regarding her testimony. ■■■ Defendant was not engaged in the practice of his profession (see *Kendall* v. *Board of Osteopathic Examiners,* 105 Cal.App.2d 239 [233 P.2d 107]) hence there is no inference these women were going to him for any treatment other than that about which they testified.

■■■ Defendant's contention that the cross-examination of the inspector of the State Board of Osteopathic Examiners was unduly restricted, is not supported by the facts. His testimony related solely to the failure of the records of the board to reveal that defendant held a license to practice for the years 1950 and 1951. Questions intended to show that the witness was biased or prejudiced against defendant were wholly immaterial in the light of the nature and limitation of the inquiry on direct examination. The truth of his testimony was not disputed. ■■■ Furthermore, defendant had

the burden of showing he had such a license if he desired to predicate a defense on such fact. (*People* v. *Dean*, 131 Cal.App. 228 [21 P.2d 126]; *People* v. *Goscinsky*, 52 Cal. App. 62 [198 P. 40]; *People* v. *Saunders*, 61 Cal.App. 341 [215 P. 120].)

 A search warrant was issued on April 24, 1951, authorizing the police officers to search defendant's office. It did not, however, include the premises of his adjacent home. It was in the latter place that the officers found the pine oil and other items. Defendant contends the search warrant should have been received in evidence. The court correctly excluded it. The fact that this evidence was illegally obtained does not, however, render it inadmissible in the state courts. (*People* v. *Kelley*, 22 Cal.2d 169 [137 P.2d 1]; *People* v. *Channell*, 107 Cal.App.2d 192 [236 P.2d 654].) The fact that it was so obtained does not lay a foundation for attack upon the judgment in the United States Supreme Court because in *Wolf* v. *Colorado*, 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782], the court declined to interfere with the conviction of a defendant in a state court on an abortion charge where some of the evidence had been obtained in violation of the guaranty against unlawful search and seizure in article IV of the United States Constitution. The recent case of *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. ——], does not detract from the holding in the Wolf case. The rationale of the Rochin case was placed squarely upon the ground that the evidence supporting defendant's conviction was secured by methods so brutally shocking as to offend the due process clause of the Fourteenth Amendment. Therefore the search warrant in this case was wholly immaterial.

Defendant urges that the court erred in instructing the jury regarding his failure to testify. On this subject the court gave the instructions in the footnote.* They

---

*"'51

"FAILURE OF DEFENDANT TO TESTIFY

"It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. The failure of a defendant to deny or explain evidence against him does not, however, create a

present a correct statement of the law. (*People* v. *Adamson*, 27 Cal.2d 478, 486-492 [165 P.2d 3].) Defendant, however, says the first instruction standing alone might have suggested to the jury that his failure to testify might be used to corroborate the testimony of the complaining witnesses, and therefore the court should have, *sua sponte*, instructed the jury that failure to testify does not constitute corroborative evidence. The answer to the first portion of defendant's contention is that the instructions must be read together. (*People* v. *Mohammed*, 189 Cal. 429 [208 P. 963].) When these instructions are thus read defendant has no justifiable complaint. If, however, he desired a special instruction he should have requested it. The general rule is that it is the duty of the court in criminal cases to give, on its own motion, instructions on the general principles of law applicable to such case where they are not proposed by the parties. But the court is not required to give such instructions upon specific points developed through the evidence or procedure at the trial, unless they are requested by the party desiring them. (*People* v. *Malone, supra*, p. 69.)

The instructions on corroboration were in accordance with the law as herein stated and were sufficiently comprehensive to furnish an accurate guide to the jury on the general subject.

There is no prejudicial error in the instructions on direct and circumstantial evidence when the instructions are considered in their entirety, particularly in view of the cautionary instructions that were given concerning the burden of proof and the jury's duty to weigh the evidence.

 Defendant contends the court erred in instructing the jury regarding the defense of alibi. The jury were told that "When one who was not at the place where a crime was committed at the time of its commission is later charged with having been present and having committed or taken part in committing such crime, his absence from the scene

---

presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

51-B

"In deciding whether or not to testify, a defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on a defendant's part will supply a failure of proof by the People so as to support by itself a finding against him on any such essential element."

of the crime, if proved, is a complete defense that we call an alibi. The defendant in this case has introduced evidence tending to prove that he was not present at the time and place of the commission of the alleged offenses for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt whether the defendant was present at the time the crime charged in one or more counts in the indictment was committed, he is entitled to an acquittal on that count, or counts, as to which you have such reasonable doubt.''

Defendant, however, argues that the effect of this instruction, which he concedes to be proper, was nullified by the following instruction: ''Each count of the indictment alleges that the offense covered by the count was committed 'on or about' a certain date specified in the count. It is wholly immaterial on what day or night the offense charged in any count in the indictment was committed, provided you believe from the evidence it was committed, and that the same was committed within three years prior to the filing of the indictment in this case, which was on May 22, 1951.'' He argues that since his defense was an alibi the jury should have been given only the first of the quoted instructions. There is no merit in this contention since the latter instruction merely purports to be on the statute of limitations and is substantially in the language of section 955 of the Penal Code. It was not misleading, particularly when considered in connection with the alibi instruction. The latter sufficiently meets defendant's objection as to the time element since witnesses testified to specific dates and periods of time which were the same as those for which defendant sought to establish alibis. (*People* v. *Shannon,* 28 Cal.App.2d 677, 681 [83 P.2d 302].)

The judgment and order are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 27, 1952, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1952.