Filed 1/31/14  P. v. Pinkney CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAUDOHN ANSAR PINKNEY,<br><br>    Defendant and Appellant. | C069491<br><br>(Super. Ct. No. 10F08022) |

A jury convicted defendant Jaudohn Ansar Pinkney of first degree residential burglary in concert, assault by means of force likely to produce great bodily injury, battery causing serious bodily injury, and robbery.  The jury found that defendant personally inflicted great bodily injury upon the victim, Roberto Hernandez.  The trial court sentenced defendant to an aggregate of 12 years in prison.

Defendant now contends (1) in connection with the robbery conviction, the trial court prejudicially erred by instructing the jury on the natural and probable consequences

1

doctrine of aider and abettor liability, because the prosecution did not rely on that theory; (2) defendant's trial counsel rendered ineffective assistance by failing to object when the trial court made a dual use of Hernandez's great bodily injury to impose upper terms and sentence enhancements; and (3) there was insufficient evidence of defendant's ability to pay the jail booking and classification fees, and no evidence of the actual administrative costs associated with his arrest and booking to support the imposition of a fee for those costs.

We conclude (1) although the trial court should not have included a sentence pertaining to the natural and probable consequences doctrine in its instructions, it is not reasonably probable that defendant would have achieved a more favorable result had that sentence not been included; (2) defendant has not shown that his trial counsel rendered ineffective assistance; and (3) defendant forfeited his fee claims by failing to object in the trial court.

We will affirm the judgment.

BACKGROUND

Roberto Hernandez paid Emily Biles, a prostitute, for sex on many occasions.

According to Hernandez, Biles asked whether she could stay at his apartment because she had been kicked out of her apartment and needed money for rent. Hernandez had begun to care for Biles and agreed to help her.

Biles described the incident differently. She said she was out drinking with defendant when Hernandez called her. Hernandez asked Biles to spend the night with him. Hernandez was supposed to pay Biles $700 for her services. Defendant drove Biles to Hernandez's apartment. Defendant's friend, a man defendant called Kasper, accompanied defendant and Biles.

Hernandez saw defendant and Kasper at the apartment complex when Biles arrived. Biles told Hernandez defendant was her boyfriend and her pimp. Hernandez said he would not pay Biles, and that Biles would stay for free because she lied about

2

defendant. Biles sent defendant a text saying Hernandez would not pay, that he was being forceful, and she asked defendant for help.

Defendant and Kasper went to Hernandez's door. Hernandez hit defendant and they began to push and punch each other; Kasper joined the fighting. Kasper and Biles then looked around the apartment for money. Kasper was wearing gloves.

Defendant kicked Hernandez and stomped on his head and body. When defendant, Kasper and Biles left, Hernandez lay on the floor and did not attempt to get up. Kasper took a suitcase, a cell phone, and a laptop or DVD player out of the apartment.

Defendant provided a somewhat different version of the incident. He said he was having drinks at a pool hall when Biles texted him that she needed help. The text did not mention money. Kasper asked defendant for a ride. Defendant wanted Kasper to stay in the car, but Kasper chose to go into the apartment complex with defendant. Defendant knocked lightly on Hernandez's door, and Hernandez opened the door wearing a shirt and socks. Defendant saw Biles crying and tried to help her, but Hernandez punched defendant on the side of his head. Defendant and Kasper fought Hernandez. When Hernandez went down, defendant stomped on him until he was "out of it," then defendant grabbed Biles and left the apartment. Kasper caught up to them with a rolling suitcase. Defendant did not see anything Kasper might have taken and dropped Kasper off somewhere. Defendant denied being Biles's pimp and said he did not know Biles was a prostitute.

Following a call about a noise disturbance, Citrus Heights Police Officer Salvatore Lombardo went to Hernandez's apartment. Hernandez was initially incoherent; an officer described him as "zombie-like." Among other things, Hernandez had facial fractures and brain injury. His injuries were potentially permanent and were consistent with being kicked or stomped in the face or head. He was only wearing a T-shirt, socks and one shoe when police arrived. Hernandez told officers that when he refused to pay

3

Biles, an individual named Pezzo and another man jumped him. Pezzo is defendant's nickname.

A jury convicted defendant of first degree residential burglary (Pen. Code, § 459 -- count one),[1] assault by means of force likely to produce great bodily injury (former § 245, subd. (a)(1) -- count two), battery causing serious bodily injury (§ 243, subd. (d) -- count three), and robbery (§ 211 -- count four). The jury found that in the commission of the offenses in counts one, two and four, defendant personally inflicted great bodily injury upon Hernandez.[2] The jury further found that in the commission of robbery, defendant acted in concert with others. The jury acquitted defendant on a count five charge of attempted murder. The trial court declared a mistrial on the lesser included offense to count five, attempted voluntary manslaughter, after the jury indicated they were hopelessly deadlocked on that count.

The trial court sentenced defendant to the upper term of nine years in prison on count four and imposed a consecutive three-year term for the great bodily injury enhancement, resulting in an aggregate prison term of 12 years. The trial court imposed, but stayed, upper terms on the convictions for counts one, two and three. The trial court also imposed and stayed three-year terms for the great bodily injury enhancements on counts one and two.

---

[1] Undesignated statutory references are to the Penal Code.

[2] On count three, the jury found that defendant personally inflicted serious bodily injury on Hernandez. That finding does not appear to be based on section 12022.7, subdivision (a).

4

DISCUSSION

I

In connection with the count four robbery conviction, defendant contends the trial court prejudicially erred in instructing the jury on the natural and probable consequences doctrine of aider and abettor liability, because the prosecution did not rely on that theory.

The trial court instructed the jury, pursuant to CALCRIM No. 400, that "[a] person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." Defendant contends the last quoted sentence, which pertains to the natural and probable consequences theory of aiding and abetting liability, was inapplicable to the case.

"It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. [Citation.]" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 (*Guiton*).) The Attorney General agrees that the challenged sentence should not have been included in the instruction. The prosecutor did not rely on the natural and probable consequences doctrine of aider and abettor liability. Because that doctrine was not relevant to the jury's consideration of the case, the sentence should not have been included in the CALCRIM No. 400 instruction. (*Guiton, supra,* 4 Cal.4th at p. 1129; Bench Notes to CALCRIM No. 400 (2011) p. 167 [last sentence of the instruction relates to the natural and probable consequences doctrine].)

Error in instructing on an irrelevant principle of law is a matter of state law to be analyzed under the *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) test. (*Guiton, supra,* 4 Cal.4th at p. 1130.) Under that test, reversal is not warranted unless an examination of the entire cause, including the facts and the instructions, the arguments of

5

counsel, any communications from the jury during deliberations, and the entire verdict, shows it is reasonably probable the defendant would have achieved a more favorable result had the error not occurred. (*Guiton, supra,* 4 Cal.4th at p. 1130; *Watson, supra,* 46 Cal.2d at p. 836.) "[I]nstruction on an unsupported theory is prejudicial only if that theory became the sole basis of the verdict of guilt; if the jury based its verdict on the valid ground, or on both the valid and the invalid ground, there would be no prejudice, for there would be a valid basis for the verdict." (*Guiton, supra*, 4 Cal.4th at p. 1130.)

Here, the prosecution presented substantial evidence from which the jury could fairly find that defendant intended to encourage or facilitate the commission of a robbery. Kasper committed a robbery: he took Hernandez's belongings out of the apartment by use of force, with the apparent intent of depriving Hernandez of the property permanently. Defendant went to Hernandez's apartment with Kasper to collect money from Hernandez. Kasper arrived at the apartment wearing gloves. Defendant saw Kasper run into the back of the apartment where Hernandez's bedroom was located. Defendant beat Hernandez, facilitating the search for money in Hernandez's bedroom. The jury could reasonably infer that defendant knew Kasper intended to commit a robbery and defendant intended to aid and abet the robbery. Moreover, defendant dissuaded Biles from speaking with the police and defendant lied to police following his arrest, evincing his consciousness of guilt. (*People v. Kendall* (1952) 111 Cal.App.2d 204, 213 [defendant's effort to suppress adverse testimony indicated a consciousness of guilt]; *People v. Cooper* (1970) 7 Cal.App.3d 200, 204-205 [defendant's untruthful statements to police showed a consciousness of guilt].)

The prosecutor told the jury that an aider and abettor is a person who acted with intent and knowledge and whose conduct facilitated, promoted, encouraged and instigated a crime. He argued, "In the crime of robbery, keep in mind that the defendant must have formed the intent to aid and abet the commission of the robbery before or while . . . the perpetrator carried away the property to a place of temporary safety. [¶] . . .

6

[¶] . . . The issue is whether or not [defendant] had knowledge and whether he intended to help out in committing this robbery. [¶] Obviously, he's the one who instigated. He went over there. He brought Kasper, okay? And when this all went down, it was about money. The minute [defendant] enters into the residence, it's about money. Then he gets into a fight, and then, of course, the other individual is out there taking the property." Defense counsel similarly told the jury, "You have to have a specific intent when you are aiding and abetting, and the specific intent that somebody does, in point of fact, steal a suitcase or steal something."

No one argued that robbery was a natural and probable or reasonably foreseeable consequence of the commission of another offense which defendant intended to commit, encourage or facilitate. Neither the prosecutor nor defense counsel referred to the sentence to which defendant objects on appeal. Under these circumstances, it is highly unlikely that the jury convicted defendant of robbery based on the natural and probable consequences doctrine. (*People v. Prettyman* (1996) 14 Cal.4th 248, 273.)

Moreover, the trial court instructed the jury that defendant was an aider and abettor if the People proved that (1) the perpetrator committed the crime; (2) defendant knew that the perpetrator intended to commit the crime; (3) before or during the commission of the crime, defendant intended to aid and abet the perpetrator in committing the crime; and (4) defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. The trial court specifically said that in order to convict defendant of robbery as an aider and abettor, the jury must conclude that defendant formed the intent to aid and abet the commission of a robbery. The trial court did not give the CALCRIM No. 402 or 403 instruction on the natural and probable consequences doctrine. And none of the jury questions concern the natural and probable or reasonably foreseeable consequences doctrine.

On this record, it is not reasonably probable that the jury found defendant guilty of robbery on the natural and probable consequences theory of aider and abettor liability.

7

Rather, it appears the jury found that defendant intended to facilitate or assist Kasper's commission of robbery. Accordingly, reversal of the judgment is not required.

Because we find it is not reasonably likely that the jury relied on the natural and probable consequences doctrine to convict defendant in count four, we need not consider whether the failure by the trial court to instruct with CALCRIM No. 402 [natural and probable consequences doctrine] was invited error.

II

Defendant acknowledges that he forfeited a claim of sentencing error based on the dual use of a fact -- Hernandez's great bodily injury -- because defendant failed to object in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Nonetheless, defendant claims his trial counsel rendered ineffective assistance by failing to object to the dual use when the trial court used that fact to impose upper terms on his convictions for robbery (count four), assault (count two) and burglary (count one) and also to impose the section 12022.7, subdivision (a) enhancements.[3]

To prevail on his ineffective assistance claim, defendant must show deficient performance by his trial counsel, i.e., representation below an objective standard of reasonableness, and resultant prejudice. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) Defendant fails to demonstrate that his trial counsel was deficient.

A sentencing court may consider various aggravating and mitigating factors in deciding the most appropriate prison term, including the circumstance that (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts

---

[3] Section 12022.7, subdivision (a) provides that any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years. "Great bodily injury" means a significant or substantial physical injury. (§ 12022.7, subd. (f).)

8

disclosing a high degree of cruelty, viciousness, or callousness; (2) the manner in which the crime was carried out indicates planning; (3) the defendant engaged in violent conduct that indicates a serious danger to society; and (4) the defendant was on probation or parole when the crime was committed. (Cal. Rules of Court, rule 4.421(a)(1), (8) & (b)(1), (4).) Only one aggravating factor is required to impose an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728-729; *People v. Castellano* (1983) 140 Cal.App.3d 608, 614-615.) But the trial court may not use a fact to impose an upper term if that fact is also used to impose a sentence enhancement. (§ 1170, subd. (b) ["the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"]; Advisory Com. com., 23 pt. 1B West's Ann. Court Rules (2013 supp.) foll. rule 4.420, p. 90; *People v. Coleman* (1989) 48 Cal.3d 112, 164-165 (*Coleman*).)

Here, the trial court could not use the fact that Hernandez suffered great bodily injury to impose upper terms because it used that fact to impose the section 12022.7, subdivision (a) enhancement. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(c); *Coleman, supra,* 48 Cal.3d at pp. 164-165.) But the trial court relied on more than one fact to impose the upper terms. It said it selected the upper term because defendant's conduct was particularly vicious and callous, resulting in significant injury to Hernandez, and because the nature of defendant's conduct indicated that he was a serious danger to society. Defendant argues the aggravating factors cited by the trial court have the same factual basis, namely the great bodily injury Hernandez suffered. We disagree.

Aside from the great bodily injury Hernandez suffered, there was substantial evidence supporting the trial court's finding that the attack against Hernandez involved extreme violence and that defendant was a serious danger to society. Hernandez told police he was "set up." According to Hernandez, Biles asked whether she could stay at his apartment because she had been kicked out of her apartment and needed money for rent. Biles was with defendant when she spoke to Hernandez. Defendant, who had a

9

history of violence when he drank, was very drunk. He drove Biles to Hernandez's apartment and brought Kasper with him. There was evidence that defendant and Kasper waited near Hernandez's apartment. Biles texted defendant when she entered the apartment. Soon there was a knock at Hernandez's apartment door. Biles, whom defendant had previously hit on more than one occasion when he was drunk, knew that a fight between Hernandez and defendant was likely. Defendant and Kasper immediately "jumped" Hernandez. The two men beat Hernandez as he tried to call for help. Defendant and Kasper kicked Hernandez while the latter lay on the ground and was not fighting back.

The trial court relied on other facts besides Hernandez's great bodily injury to impose the upper terms. Moreover, there were no mitigating circumstances, and as the trial court noted in denying probation, defendant was on probation when he committed the current offenses. Defendant has not shown that his trial counsel rendered ineffective assistance by failing to object. (*People v. Mattson* (1990) 50 Cal.3d 826, 876 [defendant claiming ineffective assistance of counsel based on a trial attorney's failure to object must demonstrate not only the absence of a tactical reason for the omission but also that the objection would have been meritorious].)

### III

Defendant further claims there was insufficient evidence of defendant's ability to pay the jail booking and classification fees, and no evidence of the actual administrative costs associated with his arrest and booking to support the imposition of a fee for those costs.[4]

---

[4] The trial court ordered defendant to pay a $340.01 main jail booking fee and a $62.09 classification fee. The trial court did not specify the statutory basis for those fees, and now the parties dispute whether they were imposed pursuant to Government Code section 29550.1 [criminal justice administration fee imposed on a person arrested by a city agency and booked into a county jail], or Government Code section 29550.2 [fee imposed on a person arrested by an agency not specified in Government Code sections

10

Defendant's claims are forfeited.  (*People v. McCullough* (2013) 56 Cal.4th 589, 591, 597-598.)  A defendant who did not object that the evidence was insufficient to support a finding of his ability to pay a booking or classification fee when the trial court imposed the fee forfeits his right to challenge the fee on appeal.  (*Ibid.*)  Similarly, defendant did not raise the claim of factual error concerning the actual administrative costs of his booking or classification at trial.  He may not raise the claim for the first time on appeal.  (*Ibid.*)

DISPOSITION

The judgment is affirmed.

                                                                         MAURO          , J.


We concur:


          ROBIE          , Acting P. J.


          HOCH          , J.

---

29550 or 29550.1].  Defendant claims the fees were imposed under Government Code section 29550.2.  As we explain, even if defendant is correct, his claims are forfeited.