[Crim. No. 1168. In Bank.—January 3, 1905.]

## THE PEOPLE, Respondent, v. JOHN H. WOOD, Appellant.

CRIMINAL LAW — MURDER — PROOF OF CORPUS DELICTI — PURSUIT OF ESCAPED CONVICTS—DEATH FROM BULLET-WOUND—AUTOPSY NOT ESSENTIAL.—Upon a trial for murder an autopsy is not necessary as proof of the *corpus delicti;* but it is sufficient proof that death ensued from the wound that deceased, while a young man, in good health, engaged as part of a posse in pursuing escaped convicts to rearrest them, received a bullet-wound which passed through his body from the right to the left side, and that immediately on receiving it he dropped, and within a few moments was dead.

ID.—EVIDENCE—RECEPTION OF WOUND FROM PURSUED CONVICTS—POSSES —CONFUSION FROM USE OF MAP—PRESUMPTION.—Notwithstanding uncertainty in the evidence growing out of the use of a map at the trial not fully explained by the words of the witnesses, their motions were part of the evidence before the jury, and where there is nothing in the record indicating that the pursuing posses fired at each other, and the evidence, so far as it can be understood, clearly points to the convicts as the persons who fired the fatal volley, it must be assumed that the jury understood the evidence, and properly concluded that deceased was killed by the fire of the convicts, and not by that of another pursuing party.

ID.—PRESENCE OF DEFENDANT—ARTICLES LEFT IN CAMP.—The presence of the defendant with the convicts who fired the fatal volley is shown both by the circumstances of the case and by the finding of articles in a camp which they had hastily broken up after firing the fatal volley, several of which had been previously possessed by defendant. All of the articles so found were admissible as evidence.

ID.—PROOF OF CONSPIRACY TO ESCAPE—THREATS TO KILL.—Evidence was admissible to show a conspiracy among the convicts, including the defendant, to escape from prison, and the declarations of the defendant and other conspirators that they would never be taken alive, and that if the militia came after them they would ambush and kill some of them and then escape.

ID.—SEPARATION INTO PARTIES—COMMON PURPOSE.—The fact of the separation of the conspirators into several parties does not destroy the effect of the plans and threats of the conspirators as evidence tending to show a guilty intent on the part of the defendant and a common purpose in the accomplishment of which the fatal shot was fired.

ID.—EVIDENCE OF TRACKS.—Evidence of tracks leading from the place where the convicts were last seen to the camp from which the fatal shots were fired, and of other tracks found the next day leading away from that spot, was competent to show that the convicts had been there.

ID.—INSTRUCTION AS TO CONSPIRACY—AIDING AND ABETTING COMMON DESIGN—MURDER.—The court properly instructed the jury that "If several persons confined in the state's prison conspire to escape therefrom, and, if necessary, to kill any person who shall lawfully attempt to arrest or recapture them, and the death of a person so engaged in the attempt to lawfully arrest or recapture them ensue in the prosecution of said common design, it is murder in all who are present aiding and abetting in the common design." Its application is limited to those present aiding and abetting at the time of the attempt to make the recapture and the death of a person engaged in the attempt, and does not make defendant liable to conviction if he was not then present.

ID.—CONSPIRACY TO ESCAPE A CRIME.—It was proper to instruct that under section 105 of the Penal Code it is a crime for any person confined in the state's prison for a term less than life to escape therefrom, and that if two or more persons confined in the prison, only one of whom was sentenced to a term less than life, should conspire together and agree to a scheme to escape from the prison, all the persons engaged in the conspiracy are engaged in a conspiracy to commit a crime.

ID.—PROOF OF CONVICTIONS—REQUEST PROPERLY REFUSED.—Where part of the case of the prosecution consisted in proof that each of the escaped convicts, including defendant, had been convicted and sent to the state's prison, and were at the time of the escape serving their sentences, it was proper for the jury to consider such evidence, and it was proper to refuse a requested instruction that the jury were not to consider any other trials or convictions of the defendant as having any bearing on the case.

APPEAL from a judgment of the Superior Court of El Dorado County and from an order denying a new trial. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

John P. G. Miller, and William F. Bray, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, and C. E. Peters, District Attorney, for Respondent.

SHAW, J.—The defendant was convicted of murder in the first degree and sentenced to death. From the judgment of conviction and from an order denying a motion for a new trial he appeals to this court.

He was one of thirteen convicts who attempted to escape from Folsom Prison on July 27, 1903. On August 1st, according to the theory of the prosecution, he with four other of the convicts were at a place called Manzanita Hill, in El Dorado County, and encountered a posse in pursuit for the purpose of recapturing them. In the conflict that ensued one of the posse, J. Festus Rutherford, was killed, and for his death the defendant was convicted of murder.

It is contended that the *corpus delicti* was not proven, because, it is said, there is no proof that the wound inflicted upon the deceased caused his death. There is no merit in this contention. The deceased was a young man, nearly nineteen years old, a member of the state militia, apparently in good health, and was actively engaged at the time he was shot in pursuing the convicts to rearrest them. He received a wound from a bullet, which entered on his right side, and, passing through the body, came out on the left side some two inches higher than the point at which it entered. Its course was such that it would probably pass through a part of the heart. Immediately on receiving the wound the deceased dropped, and within a few moments was dead. There was no autopsy, and hence it cannot be said with certainty what particular organs of the body were pierced by the bullet. An autopsy is not necessary as a part of the proof that death was caused by a wound of this character. The circumstances above detailed are sufficient to satisfy any reasonable mind that the deceased came to his death by reason of the wound.

It is further contended that the proof of *corpus delicti* is defective because it has not been shown that the bullet which killed the deceased was fired by the defendant or either of the convicts with him. It is true that no witness testified that he saw the defendant on that occasion, but there is sufficient circumstantial evidence to show that the defendant and four

other convicts were camped on Manzanita Hill at the time the posse arrived there in pursuit, and that when the deceased and several others of the posse were within twenty-five or thirty feet of the convicts' camp, and before they had perceived the convicts, they were fired on by the convicts themselves, and that the deceased fell at the first fire. There is much confusion in the testimony, as given in the transcript, as to the whereabouts of the other divisions of the posse at the time this first firing occurred. The defense claims that this first shooting was by some other division of the posse, who fired on the division in which the deceased was engaged. The uncertainty in the evidence as given arises from the fact that the witnesses had before them a large map upon which was designated the topography and the location of the physical objects to which they referred, and that in testifying they would point to the places on the map and designate them by the words, "here" and "there." From the manner in which the testimony is reported we cannot determine what places they were referring to or the relative positions of the different places. This uncertainty is caused, primarily, either by the manner of preparing the bill of exceptions or by the failure of the witnesses to describe in words the places referred to at the time they were pointed out on the map. These motions of the witnesses were, however, a part of the evidence, and the failure to report them or describe them in the bill of exceptions does not lessen the force and effect of the evidence as given to the jury, nor authorize us to conclude that it must have been uncertain, or that it required a different conclusion from that reached by the jury. The map was before them also, and it does not appear that they did not fully perceive and understand the relative positions of the different places. There is nothing in the record indicating to us that the pursuing posses fired on each other. The evidence, so far as it can be understood, clearly points to the convicts as the persons who fired the fatal volley. In this condition of the record we must assume that the jury understood the evidence, and properly concluded that the deceased was killed by the fire of the convicts, and not by a shot from one of the other divisions of the pursuing party.

It is claimed that there is no evidence that the defendant was present with the other convicts at the time, but this claim

is manifestly untenable. Numerous articles were found at the place from which the shots were fired towards the deceased, indicating that there had been a camp at that place which had been hastily broken up and many articles left on the ground. Among these, several were found which had been previously in the posession of the defendant. It is unnecessary to state the evidence in detail. There were numerous circumstances, and, taken together, they were sufficient to prove that the defendant was one of the party encamped on the hill, and that it was this party that fired the shot which killed the deceased.

There was no error in admitting evidence of the conspiracy among the prisoners confined at Folsom, including the defendant, to escape, nor the declarations of the defendant and others of the conspirators that they would never be taken alive, and that if the militia came after them they would ambush them and kill a few and in the confusion thus caused manage to escape. These threats and plans were made by the defendant himself, with the others, and the fact that afterwards he and four others separated themselves from the remainder of the party does not destroy the effect of these plans and threats as evidence tending to show a guilty intent on the part of the defendant and a common purpose, in the accomplishment of which the fatal shot was fired.

We do not clearly understand the point of the objection to the evidence of the tracks leading from the place where the convicts were last seen up to the camp on Manzanita Hill, where the shooting occurred, and other tracks found the next day leading away from the spot. They were admitted for the purpose of showing that the convicts had been on Manzanita Hill. They were clearly competent for that purpose.

The several exhibits taken from the camp on Manzanita Hill were properly admitted in evidence. They consisted of tin cans, a spoon, a barley-sack, a hat, and various other articles commonly found about a camp. Their presence at the camp after the party using them had departed indicated a hasty departure, and supported the theory of the prosecution that the convicts had been surprised at their camp, and immediately after the shooting had departed without gathering up these articles. In addition to this reason, as several of them were identified as having been previously in the posses-

sion of the defendant, they were competent as evidence that the defendant was himself present on that occasion.

The court instructed the jury as follows: "If several persons confined in the state's prison conspire to escape therefrom, and, if necessary, to kill any person who shall lawfully attempt to arrest or recapture them, and the death of a person so engaged in the attempt to lawfully arrest or recapture them ensue in the prosecution of said common design, it is murder in all who are present aiding and abetting in the common design. The law makes no distinction or difference between any of the parties so engaged." As we understand the appellant's contention, it is that this is erroneous, because, as he claims, it informs the jury that they could find the defendant guilty if he was one of the thirteen who originally conspired to escape, although he was not one of those present at the time of the homicide. We do not think it can be so construed. The entire case of the prosecution consisted of an effort to prove that the defendant was present at the scene of the conflict in which the homicide occurred. It was never contended that he could be convicted if he were proven to be one of the thirteen who escaped, although not of the number present at the conflict on Manzanita Hill. The jury could not have so understood the instruction, and it is not fairly susceptible of that meaning. Its application is limited by its terms to those who were present aiding and abetting, and this could only be understood to refer to their presence at the time of the attempt to make the recapture. The same objection is made to other instructions, but, taking all of the instructions together, we think the jury could not have supposed that the defendant could be convicted unless they were satisfied from the evidence that he was one of those present at the time of the death of the deceased.

There was an instruction to the effect that, under section 105 of the Penal Code, it is a crime for any person confined in the state prison for a term less than life, to escape therefrom, and that if two or more persons confined in the prison, only one of whom was sentenced to a term less than life, should conspire together and agree to a scheme to escape from the prison, all the persons engaged in the conspiracy are engaged in a conspiracy to commit a crime. We can see no error in the instruction. It is immaterial that the defendant was con-

fined for the term of his natural life, and that there could be no criminal conspiracy under the section of the code referred to with reference to his escape. If he with others conspired to effect the escape of himself and the others, some of whom were imprisoned for a term less than life, such conspiracy would be a crime within the meaning of the law.

After the argument was concluded and the court had formulated its charge, the defendant asked the following instruction, which was refused: "You are further instructed that you are not to consider any other trials or convictions of this defendant as having any bearing on this case; it is your duty to consider no other matters except the evidence and the instructions of this court." The court instructed the jury at great length that they must consider no other matters except the evidence and the instruction of the court. So far as the instruction asked required the jury not to consider evidence of other trials and convictions, it was erroneous, and the court properly refused it. Part of the case of the prosecution consisted in proof that the thirteen convicts had been convicted and sentenced to the state prison, and were at the time of the escape serving their said sentences. It was proper, therefore, for the jury to consider the evidence of such trials and convictions, including that of the defendant.

We have carefully read the evidence and the briefs of counsel, and can find no error in the record. It is true, as counsel says, that many objections made by the defendant's attorney were overruled and many objections to testimony offered by him were sustained. But in each case we think the rulings of the court below were proper.

The judgment and order are affirmed.

Van Dyke, J., Angellotti, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.