[Crim. No. 294. Fourth Appellate District.—June 8, 1936.]

THE PEOPLE, Respondent, v. WILLIAM C. HARDEN et al., Appellants.

Fred A. Steiner and O. A. Thorpe for Appellants.

U. S. Webb, Attorney-General, and Walter L. Bowers, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendants were jointly charged with the crime of grand theft and, in a second count, with conspiracy to commit grand theft. Each defendant was also charged with a prior conviction but this charge against Doud was dismissed during the trial. A jury found each defendant guilty on both counts, but found in favor of the defendant Harden on the charge of a prior conviction. Both defendants have appealed from the judgment and from an order denying their motion for a new trial.

The evidence is voluminous and it would serve no useful purpose to give the details here. To shorten a long story, the appellant Harden met the prosecuting witness, a widow 60 years of age, at Long Beach in July, 1934. He made a number of misrepresentations to her, including the false statement that he was unmarried and giving her an assumed name. He paid her marked attentions and by September she agreed to marry him. They arranged to start at 8 A. M. on September 25, 1934, for Yuma to be married, but he contrived to delay their start until 3 P. M. They started in her automobile and on reaching San Diego registered at a hotel. They spent the next few days partly in San Diego and partly in Tia Juana.

During this time Harden picked up Doud, who claimed never to have seen Harden before, although it was thoroughly established at the trial that they had known each other for eight years and had worked together at various race tracks throughout the country. Doud pretended to have inside information as to which horses were to win the various races then being run. He pretended to arrange with Harden to furnish the money with which Harden was to make certain bets and that Harden was to receive 25 per cent of the winnings. One or two such bets were made and when Harden returned with the winnings, apparently in phoney money, Doud handed 25 per cent thereof to Harden in the presence of the prosecuting witness. Doud then persuaded Harden, in her presence, to make a large bet by putting up his (Harden's) check which he said he would arrange with the bookmaker to accept. They reported to the prosecuting witness

that this was done and that Harden had won a large amount, but that the bookmaker would not turn over the money until Harden produced the amount of his check to convince them the check was good. The appellants then told the prosecuting witness that her fiance would be sent to the penitentiary unless the amount of the check was raised. They went through an elaborate scheme, including telegrams supposed to have been sent and received, and finally convinced the prosecuting witness that they had raised all of the money needed with the exception of about $8,700. She told them she had this amount in her bank at Long Beach and they persuaded her to get it and turn it over to them, saying it would be returned within an hour, and convinced her that this was necessary in order to keep her future husband from going to the penitentiary.

She went to Long Beach and drew that amount of money from her bank and turned the same over to them, although they had so arranged matters that the actual transfer of the money took place at Tia Juana. Another elaborate series of events was then staged through which they convinced the prosecuting witness that her future husband had made other bets and, through a misunderstanding of Doud's instructions, had lost not only Doud's money but all of his own and all of the money she had handed them. All three then came back to San Diego and they informed the prosecuting witness that it was necessary for Harden to go to Baltimore to procure funds for his own use and to pay back some he had borrowed in order to prove his ability to make the check good.

They then persuaded the prosecuting witness to go to Galveston, telling her that Harden would join her there on his return from Baltimore. While she was in Galveston they sent her several telegrams calculated to keep her waiting there. One of these, purporting to be from Doud and addressed to her supposed husband, was proved to have been written by Harden while he was with Doud, who dictated it. The prosecuting witness remained in Galveston for some three weeks and then told her story to her son and later to the police. The two appellants were not apprehended until September, 1935.

It is first contended that the evidence is not sufficient to sustain the conviction. While the appellants freely ad-

mitted on the stand that they received this money they told a fantastic and unbelievable story to the effect that the money was merely loaned to them. They call attention to a small portion of the testimony given by the prosecuting witness in which she referred to the transaction as a loan. The rest of her testimony and the testimony given by the appellants themselves is amply sufficient to support the verdict of the jury and sufficiently disproves the contention that this transaction was an ordinary loan. It is also urged that the representations made to the prosecuting witness by the appellants were not proved to have been false and fraudulent. Many of them were definitely proven to have been false, some of these by the testimony of the appellants themselves, and the evidence, as a whole, is amply sufficient to show that each material representation was false. It is argued that these representations were as to future events and not of past or existing facts. With the exception of the representation that they would return her money within an hour every material representation was of a past or existing fact. ██ It is further urged that since the money was actually transferred in Mexico no offense was committed in California. A sufficient answer to this contention is to be found in section 778a of the Penal Code and in subdivision 2 of section 27 of that code, since the evidence conclusively shows that most of the acts leading up to the obtaining of this money from the prosecuting witness took place in San Diego and that each of the defendants, almost immediately after receiving the money, came back to San Diego with a part of the money in his possession.

With respect to the claimed insufficiency of the evidence, it may be added that not only was there ample evidence to sustain the verdict, but both appellants, after their arrest, made statements to the officers, both at Long Beach and at San Diego, which confirms the other evidence. To the officers at Long Beach Harden said: "You knew we didn't want to beat that old woman. It was kind of forced upon us and we had just fell for a man and the move and expense was quite high and we just had to take her to kind of get even." To the same officers Doud said: "You know I have always made it a practice not to play for women and I didn't want to do it in this case but the circumstances kind of forced me to it and I am certainly sorry that I ever took hold of it." Some contention is made that the statements made at Long

Beach were not admissible in evidence, as not having been voluntarily made. Not only is this contention without merit, but both appellants made similar statements to officers at San Diego after being taken there, and it is not even contended that the latter were not voluntarily made.

The appellants next charge the district attorney with prejudicial misconduct in some half dozen instances and complain of some ten errors of the court in ruling upon the admission of evidence. All of these are trivial and most of them are so obviously without merit that we do not feel justified in discussing them in detail. We have carefully gone over the record and any possible errors could not be held re-. versible in view of the evidence and the provisions of section 4½ of article VI of the Constitution. Most of the claims of misconduct on the part of the district attorney are entirely without merit and any possible misconduct in one or two instances was trivial in nature and adequately cured by instructions of the court. The court's rulings on the admission of evidence were entirely too favorable to the appellants and the only real error we find therein is in one instance where the court erroneously sustained the appellants' objections to the admission of certain evidence which was plainly admissible.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.