[Crim. No. 548. Fourth Dist. Oct. 26, 1942.]

THE PEOPLE, Appellant, v. ANTHONY CORICA, Respondent.

Earl Warren, Attorney General, and Herbert E. Wenig, Deputy Attorney General, for Appellant.

Calvin H. Conron, Jr., and Charles H. Carr for Respondent.

MARKS, J.—This is an appeal by the People from a judgment entered after an order sustaining a demurrer to an indictment charging Corica and twenty-four others with conspiracy to violate section 337a of the Penal Code.

The charging part of the indictment, as it affects Corica, is as follows:

"Anthony Corica, also known as Tony Corica, (and others), are accused by the Grand Jury of the County of Kern, State of California, by this indictment, found this 29th day of January, 1941, of the crime of Felony, to-wit: Conspiracy to commit pool-selling and bookmaking, in violation of Sections 182 and 337a of the Penal Code of the State of California, committed as follows:

"That commencing on or about the first day of April, 1940, and continuing to and including the sixth day of December, 1940, said Anthony Corica, also known as Tony Corica, (and others) and certain other persons whose names are unknown to this Grand Jury, in violation of subdivision 1 of Section 182 of the Penal Code of the State of California, did willfully, unlawfully and feloniously conspire, combine and agree together and with each other that certain of their number would engage and they did engage at certain premises in the City of Bakersfield, County of Kern, State of California, including premises in said City, County and State located at: (Descriptions) in pool-selling and bookmaking and in laying, making, offering and accepting bets and wagers upon the results and purported results of horse races and would keep and occupy during all of said period of time said premises and each of them with books, papers, apparatus, devices and paraphernalia for the purpose of recording and registering bets and wagers and purported bets and wagers, and of selling pools and purported pools upon the results and purported results of horse races, in violation of subdivisions I, II and VI of Section 337a of the Penal Code of the State of California, and that certain of said conspirators would supply to each of the pool-selling and bookmaking establishments located on said premises, and to the persons maintaining the same and there engaging in pool-selling and bookmaking, race results and other horse racing news and information from the various race tracks throughout the United States for use in said unlawful betting and wagering transactions and pool-selling and bookmaking." Fourteen specific overt acts are charged.

The principal attack on the indictment is made on the ground that it charges that in carrying out the conspiracy *certain* of the defendants, without naming or identifying any of them, would engage in pool-selling and bookmaking and that *certain* of the defendants, without naming or identifying any of them, would furnish racing news information for use in the unlawful enterprise.

It is argued that the mere act of furnishing racing news and information is not a crime in California and that since Corica is not named as one of the conspirators who agreed to operate or participate in the operation of bookmaking establishments, we must, under the presumption of his inno-

cence, presume that he was only to furnish racing news and that no crime was charged against him. (See 14 Cal.Jur. p. 48.) The California cases of *People* v. *Brophy*, 49 Cal.App.2d 15 [120 P.2d 946] ; *Kreling* v. *Superior Court*, 18 Cal.2d 884 [118 P.2d 470], and, *In re Moore*, 18 Cal.2d 889 [118 P.2d 478], are relied on to support this argument.

*People* v. *Brophy, supra,* was a case in which the appellant was convicted of perjury alleged to have been committed in a civil action which had as its purpose enjoining the removal of telephones installed under contract. *Kreling* v. *Superior Court, supra,* and *In re Moore, supra,* were cases in which the two men had been convicted of contempt of court in violating the terms of an injunction issued by the superior court in *People* v. *Annenberg* which was an action to enjoin dissemination of racing news. In none of these cases was the question of conspiracy involved. The precise question before us here was not decided.

We do not question the rule announced in *People* v. *Brophy, supra* (pp. 30, 31), upon which Corica relies here. It is there stated:

"The law is clear and decisive on the question of the enforceability of a contract even though one of the parties thereto has knowledge of an intended purpose of the other party, by means of the contract, or the performance thereof, to violate some law or public policy of the state. The rule in that regard is thus stated in 53 A.L.R. 1364 at page 1366 :

" 'The rule, according to the great weight of authority, is to the effect that a contract legal in itself is not rendered unenforceable by the mere fact that one of the parties thereto has knowledge of an intended purpose of the other party thereto, by means of the contract or subject-matter thereof, to violate some law or public policy of some state ; or, as is stated in 6 R.C.L. p. 696, ''Where there is no moral turpitude in the making or in the performing of the contract, the mere fact that an agreement the consideration and performance of which are lawful incidentally assists one in evading a law or public policy, is no bar to its enforcement, and that, if the contract has been performed by the promisee, it is no defense that the promisor knew that the agreement or its performance might aid the promisee to violate the law or to defy the public policy of the state, when the promisor neither combined nor

conspired with the promisee to accomplish that result, nor shared in the benefits of such a violation.'' ' ''

For the purposes of this case we may concede that as a general rule it is the law of this state that the furnishing of racing news to bookmakers is not of itself a crime where no question of a combination or a conspiracy to commit a crime is involved. This concession does not settle the problem presented.

Where two or more persons conspire to commit a crime there is a conspiracy. (§ 182, Pen. Code.) A conspiracy is punishable only when there is an overt act committed within this state. (§ 184, Pen. Code.)

In *People* v. *George,* 74 Cal.App. 440 [241 P. 97], at page 457, the court said:

''It is evident that under the terms of section 184 of the Penal Code the agreement or combination is the gist of a criminal conspiracy. The negative mandate of the section, if we may employ a contradiction of terms, that 'no agreement amounts to a conspiracy' unless an overt act be performed in furtherance of it, must surely, when an overt act *is* performed, resolve itself into the affirmative that the *agreement* thereupon amounts to a conspiracy. This view is in accord with the law in the jurisdictions generally in which the performance of an overt act is necessary to fasten criminality upon those who conspire to consummate a forbidden purpose. At common law the combination was the gist of the conspiracy. Under the authorities the situation is not changed by statutes requiring the performance of an overt act in order to complete the crime. The agreement is still the gist of the offense.''

To render him guilty it is not necessary that a conspirator perform some act which is in itself unlawful in carrying out the criminal conspiracy. If there is a conspiracy to commit murder by means of poison sent through the mail, a conspirator may not escape responsibility because he only agreed to and did purchase the postage stamps with which the poison is sent to the victim, an act entirely lawful in itself, but punishable if done under an agreement among the conspirators and in carrying out the unlawful purpose of the conspiracy.

Here we have it alleged that the conspirators conspired together to commit the crime denounced by section 337a of the Penal Code. The conspiracy then became complete because

the agreement to commit the unlawful act was the gist of the crime. This is true even though it is also true that the conspirators cannot be punished unless one or more of them commit an overt act within the state. It is not necessary that the purpose of the conspiracy be fully accomplished (*People* v. *George, supra*) nor that each conspirator perform some overt act. It is sufficient if one conspirator commits an overt act in carrying out the purpose of the conspiracy thus making all conspirators liable to punishment.

 Under our simplified forms of criminal pleading it was unnecessary to allege just what particular part each conspirator was to play in carrying out the conspiracy. As was said in *People* v. *Yant,* 26 Cal.App.2d 725 [80 P.2d 506]:

"Under our system of procedure in criminal cases, as a part of the accusatory procedure, the law now provides that in every case the accused is entitled to a copy of the testimony given before the grand jury or the committing magistrate, as the case may be. (§§ 870, 925, Pen. Code.) The former requirement that a pleading must set forth the particular circumstances of the offense charged, as now amended declares that it shall be sufficient if it charges 'in any words sufficient to give the accused notice of the offense of which he is accused.' (§ 952, Pen. Code.) The appellant herein was entitled simply to notice of the offense of which he was charged, but not to the particular circumstances thereof, such details being furnished him by the transcript of the testimony upon which the indictment was founded. (*People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970]; *People v. Gilbert, supra* [26 Cal.App.2d 1 (78 P.2d 770)]; § 951, Pen. Code.)"

This also disposes of the argument that the demurrer was properly sustained because of uncertainties in the indictment.

The judgment is reversed with instructions to the trial court to overrule the demurrer and to permit Corica to plead to the indictment.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied November 6, 1942, and respondent's petition for a hearing by the Supreme Court was denied November 24, 1942.