[Crim. No. 5293. In Bank. Apr. 20, 1953.]

THE PEOPLE, Respondent, v. ROY L. BUFFUM et al., Appellants.

Joseph A. Ball, Leonard Wilson and Robert P. Dockery for Appellants.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Roy L. Buffum, a physician and surgeon, and Reginald L. Rankin were indicted for and convicted of violating section 182 of the Penal Code[1] in that they conspired to use certain means to induce miscarriages contrary to section 274.[2] Defendants appeal from the judgments and from an order denying their motions for a new trial.

Four women who were pregnant went separately to the office of Buffum in Long Beach to solicit his aid in inducing miscarriages. One of the women was accompanied by her mother. Buffum refused to perform the abortions but took the telephone numbers of three of the women and told each she would receive a call. Rankin later telephoned them, told them the amount they must pay, arranged to meet them at a designated intersection in Long Beach, and indicated that he would transport them to the place where the abortions were to be performed. Buffum gave Rankin's telephone number to the fourth woman, and she called Rankin and made similar arrangements.

Rankin met the women at the appointed place and drove them in his automobile to Tijuana, Mexico. There, with the assistance of Rankin, another man performed an operation upon each of them. While in the operating room, three of the women gave money to Rankin. Later the same day Rankin returned the women to Long Beach, where they again went their separate ways. Subsequently three of them required hospitalization. Buffum treated one of them without preliminary examination or inquiry as to the nature of her illness, and reimbursed her family. for the hospital bill.

---

[1] Penal Code, section 182, provides: "If two or more persons conspire: 1. To commit any crime; . . . They are punishable as follows: When they conspire to commit any felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of the said felony. . . ."

[2] Penal Code, section 274, provides: "Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years."

The principal questions raised on this appeal are: (1) Can the convictions be supported on a showing that defendants conspired in California to perform abortions in Mexico? (2) Did the court err in admitting proof of the law of Mexico on abortions? (3) Is the evidence sufficient to support a finding that defendants conspired in California to perform abortions in this state? (4) Did the court err in failing to instruct upon the necessity for corroboration?

## CONSPIRACY TO PERFORM ABORTIONS IN MEXICO

■ A conspiracy may be established by showing that there was an agreement between two or more persons to commit a crime and that an act was done in California to effect the object of the agreement. (Pen. Code, §§ 182, 184; see *People* v. *Daener,* 96 Cal.App.2d 827, 831 [216 P.2d 511] ; *People* v. *Benenato,* 77 Cal.App.2d 350, 358 [175 P.2d 296] ; *People* v. *Huling,* 71 Cal.App. 144, 146 [234 P. 924].) The object of defendants' agreement, as alleged in the indictment, was "to violate section 274, Penal Code of the State of California." No other unlawful purpose was stated, and defendants, of course, cannot be punished for conspiracy unless the doing of the things agreed upon would amount to a violation of section 274. ■ The statute makes no reference to the place of performance of an abortion, and we must assume that the Legislature did not intend to regulate conduct taking place outside the borders of the state. (See *People* v. *Chapman,* 55 Cal.App. 192, 197 [203 P. 126] ; *Foley Bros.* v. *Filardo,* 336 U.S. 281, 284-286 [69 S.Ct. 575, 93 L. Ed. 680] ; *American Banana Co.* v. *United Fruit Co.,* 213 U.S. 347, 356-357 [29 S.Ct. 511, 53 L.Ed. 826].) ■ Similarly, section 182 of the Penal Code, standing alone, should not be read as applying to a conspiracy to commit a crime in another jurisdiction.

The People rely upon subdivision 1 of section 27 of the Penal Code, which provides that persons may be punished "under the laws of this state" if they "commit, in whole or in part, any crime within this state," and also upon section 778a of that code, which provides: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state." These sections were not mentioned

in the indictment, but if it be assumed that they may properly be considered here, they do not authorize a conviction on the evidence presented. ■ The statutes must be construed in the light of the general principle that, ordinarily, a state does not impose punishment for acts done outside its territory. (See *People* v. *McGowan*, 127 Cal.App. 39, 42 [14 P.2d 1036]; *State* v. *Volpe*, 113 Conn. 288 [155 A. 223, 226, 76 A.L.R. 1083]; Rest., Conflict of Laws, §§ 425, 427.)

■ It is apparent from the authorities which have discussed subdivision 1 of section 27 and similar statutes in other jurisdictions that such a provision can apply where the acts done within the state are sufficient to amount to an attempt to commit a crime but not otherwise. (*People* v. *MacDonald*, 24 Cal.App.2d 702, 709-711 [76 P.2d 121]; *People* v. *Werblow*, 241 N.Y. 55 [148 N.E. 786, 789] [opinion by Judge Cardozo]; see Rest., Conflict of Laws, § 428; Comment e; *People* v. *Botkin*, 132 Cal. 231, 233 [64 P. 286, 84 Am.St. Rep. 39]; *People* v. *Sansom*, 37 Cal.App. 435, 438-439 [173 P. 1107]; *People* v. *Chapman*, 55 Cal.App. 192, 196-199 [203 P. 126] [act constituting an "essential ingredient" of the crime]; *cf. People* v. *Harden*, 14 Cal.App.2d 489 [58 P.2d 675]; *People* v. *Lakenan*, 61 Cal.App. 368 [214 P. 1021]; *Reass* v. *United States*, 99 F.2d 752, 755 [stating that certain acts were only preparation and not "part" of the crime itself].) To read such a statute as authorizing the punishment by one state of acts which do not amount to an attempt but are merely preparatory to the commission of a crime in another state would seem tantamount to an effort to regulate conduct in the other jurisdiction. (*Cf. Foley Bros.* v. *Filardo*, 336 U.S. 281, 284-286 [69 S.Ct. 575, 93 L.Ed. 680].)

■ Section 778a of the Penal Code should also be construed as applying only where the acts done within the state amount to an attempt. By its terms the section is limited to acts done "in execution or part execution of" an intent to commit a crime, and these words are comparable to the expression "in whole or in part" as used in subdivision 1 of section 27. The statute further requires that what is done in the state must be of such a nature that it "culminates" in the commission of an offense, and this is analogous to the requirement in attempt cases that there must be a "direct" ineffectual act towards consummation of the crime. (*Cf. People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308].) Our construction of section 778a is in accord with the decision in *People* v. *MacDonald, supra,* 24 Cal.App.2d 702, 709-711,

which held that the section did not warrant a conviction for contracting an incestuous marriage where it appeared that the defendant and his daughter, while in California, formed an intent to marry and then travelled on a train from California to Arizona, in which jurisdiction the ceremony was performed. The cases of *People* v. *Marvin,* 48 Cal.App.2d 180, 192 [119 P.2d 413], and *People* v. *Harden,* 14 Cal.App.2d 489, 492 [58 P.2d 675], are not in conflict with what we have said. The opinions in those cases indicate that sufficient acts were performed within the state to constitute attempts to commit crimes.

The questions presented here are different from those arising in venue cases. In *People* v. *Anderson,* 90 Cal.App.2d 326, 330-331 [202 P.2d 1044], it was held that the defendants, who were prosecuted for abortion and conspiracy to commit abortion, could properly be tried in the county where the conspiracy was formed and from which they transported one of the women involved, even though the abortions were performed in another county. Sections 182 and 184 of the Penal Code, however, specifically provide that a conspiracy case may be tried in any county where an overt act is done. The Anderson case also relied on section 781 of the Penal Code,[3] relating to venue where acts occur in two or more counties, but under this section venue may lie in a particular county even though the acts done there are not sufficient, considered alone, to constitute an attempt. (See *People* v. *Megladdery,* 40 Cal.App.2d 748, 774-777 [106 P.2d 84].) Moreover, the courts, in construing the venue statutes, obviously are not limited by the operation of the general principles, discussed above, that a state ordinarily does not impose punishment for acts done in other jurisdictions and that, in the absence of a contrary intent, its statutes will not be read as seeking to regulate conduct beyond its own borders.

Since section 778a and subdivision 1 of section 27 do not apply unless acts are done within the state which amount at least to an attempt, we must next determine whether defendants could properly be convicted of an attempt to violate section 274 upon a showing that they transported the four women from a place in California to a place in Mexico with

---

[3]Section 781 of the Penal Code provides: ''When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county.''

the intention of performing abortions upon them in that country. Sections 663 and 664 of the Penal Code prescribe punishment for attempts to commit crimes but do not define the offense. ▮ This court has held that two elements are necessary to establish an attempt, namely, a specific intent to commit a crime and a "direct" ineffectual act done towards its commission. (*People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308]; see *People* v. *Anderson*, 1 Cal.2d 687, 689-690 [37 P.2d 67].) ▮ Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature. (*People* v. *Miller*, *supra*, 2 Cal.2d at pp. 530-532.) No case has been cited or found which holds that persons can be convicted of an attempt to commit abortions if they do no more within the state than make arrangements for transportation and then take women from California to Mexico for the purpose of performing abortions upon them in that country. ▮ It is our opinion that, under the rules set forth in the Miller case, such conduct is merely preparatory and does not constitute a direct, unequivocal act done toward the commission of the offense specified by section 274 of the Penal Code. (*Cf. People* v. *MacDonald*, *supra*, 24 Cal.App.2d 702 [where defendant and his daughter travelled from state intending to contract incestuous marriage elsewhere]; *People* v. *Miller*, *supra*, 2 Cal.2d 527; *People* v. *Werblow*, 241 N.Y. 55 [148 N.E. 786, 789]; *Reass* v. *United States*, 99 F.2d 752, 755.) There is nothing in the section which indicates that transportation or arrangement therefor has a direct relation to the acts prohibited by the statute. Decisions upholding convictions under statutes which expressly make transportation for certain purposes a crime or an element of a crime are not helpful in construing provisions like those involved here. (See, e.g., *Gregg* v. *United States*, 113 F.2d 687, 690-691, judgment reversed on other grounds upon rehearing, 116 F.2d 609.)

It follows that the judgments cannot be sustained upon the showing that defendants agreed to transport the four women from California to Mexico and perform the abortions there because our statutes do not provide a criminal penalty for such conduct. Instructions to this effect requested by defendants were refused, and since no instructions were given on the subject, the ruling was erroneous.

## Proof of Mexican Law

 The prosecution was permitted to prove, over objection, that the Penal Code of Mexico provides that anyone who causes a woman to abort, unless she is in danger of death, will be sentenced to prison, and that a doctor who commits such an offense will, in addition, be suspended from exercising his profession. Admission of this evidence was clearly erroneous. As we have seen, the charge was not conspiracy to violate Mexican law, but, rather, conspiracy to violate the law of California, and it was not proper for the prosecution to prove that defendants' activities in Mexico were punishable under the laws of that country. The placing of such a criminal label on the acts done in Mexico obviously made defendants' position more unfavorable in the minds of the jurors and may have led them to believe that defendants could be convicted upon the basis of Mexican law instead of upon the charge in the indictment. In this connection it should be noted that the court refused to give instructions requested by defendants which in substance would have told the jury that defendants could not be prosecuted in California for a violation of the law of Mexico, and that, even though they may have conspired to commit an act declared by the laws of that country to be unlawful, they should be acquitted if they did not intend to do any act or accomplish any criminal purpose in California.

## Conspiracy to Perform Abortions in California

There is evidence which might, under proper instructions, support a conviction upon the theory that defendants conspired to perform abortions in California. In a telephone conversation Rankin told one of the women that they "were going to San Diego for the operation" and that they were going there "because it was too warm in Long Beach, the heat was on." He told another of the women that he was taking three women to San Diego and that she could go with them if she had $250. Still another of the women was told by Buffum that, if she used the telephone number he gave her, someone would take her to San Diego. Buffum told the arresting officer that the first time he knew that Rankin was taking the women to Tijuana was after the trip, although he "knew they were going somewhere down that way."

 The evidence meets the requirement of section 184 of the Penal Code that some act, other than the making of the agreement, must be done in California to effect the object of

the conspiracy. Buffum gave Rankin the telephone numbers of three of the women and gave Rankin's number to the fourth one. Rankin talked to each of them, quoted prices for the termination of their pregnancies and said that he would take them to a place where the operations would be performed. Thereafter he met the women and transported them over California highways for the purpose of taking them to such place. Under this evidence, if the agreement was to have abortions performed in California, an offense was completed when the agreement was followed by the acts in this state (Pen. Code, §§ 182, 184), and the subsequent transportation of the women across the border into Mexico for performance of the abortions did not operate to nullify the acts which had already been done in California. ■ The events which took place in Tijuana were, of course, relevant to show that the object of the conspiracy was the use of instruments and other means with intent to procure miscarriages, and evidence thereof was properly admitted for this purpose.

## NECESSITY FOR INSTRUCTIONS ON CORROBORATION

The trial court refused to instruct that the four women were accomplices of defendants and that their testimony required corroboration under section 1111 of the Penal Code,[4] and it failed to instruct on section 1108,[5] which provides that in a trial for procuring or attempting to procure an abortion the testimony of the woman upon whom the offense was committed must be corroborated. If the four women come within either of these provisions, their testimony requires corroboration, and an appropriate instruction should have been given.

In a closely analogous case involving section 1111 it was held that a woman who submits to an abortion is not an accomplice of a person who is charged with a violation of section 274 of the Penal Code. (*People* v. *Clapp*, 24 Cal.2d 835, 836 et seq. [151 P.2d 237].) The only difference between that

---

[4]Penal Code, section 1111, provides: ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

[5]Penal Code, section 1108, provides: ''Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence.''

case and the present one, with regard to the problem which we are now considering, is that here the defendants are charged with conspiracy to violate section 274 rather than with actual violation of that statute. The rule of *People* v. *Clapp* has been applied in at least one conspiracy case (*People* v. *Stone*, 89 Cal.App.2d 853, 869-870 [202 P.2d 333]) and possibly in another (*People* v. *Miner*, 96 Cal.App.2d 43, 53 [214 P.2d 557]). Defendants assert that these decisions are erroneous, and they argue that a woman who submits to an abortion, even though not an accomplice insofar as concerns an actual violation of section 274, is nevertheless a co-conspirator with the person who performs the abortion, that both are subject to prosecution for the identical offense of conspiracy to violate section 274, and that they are, therefore, accomplices within the meaning of section 1111. In order to pass upon this question we must examine the reasoning followed in the Clapp case and determine whether it is applicable here.

The Penal Code contains two separate provisions which punish persons who participate in abortions, namely, section 274, which, as we have seen, relates to the conduct of persons other than the pregnant woman, and section 275, which concerns only the acts of the woman.[6] The Clapp case held that these statutes, construed together, disclose a legislative intent to subject the woman to punishment under section 275 but not under the distinct offense set forth by section 274 and that the specific provision in section 275 supersedes the general provision in section 31 that all persons who aid and abet in the commission of an offense are principals in any crime so committed.[7] Although section 31, if considered alone, would by its terms render the woman punishable as a principal for the crime described by section 274, the court concluded that section 275 prevented such an application of section 31 and that the woman was therefore not subject to prosecution as a principal under section 274 and was not an accomplice of

---

[6] Penal Code, section 275, provides: "Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than one nor more than five years."

[7] Penal Code, section 31, provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

persons who were charged only with violating section 274. (24 Cal.2d at pp. 838-839; see, also, *People* v. *Wilson*, 25 Cal. 2d 341, 346 [153 P.2d 720].)

Section 182 of the Penal Code, which proscribes conspiracy to commit a crime, is closely analogous to section 31. Both provisions operate generally with respect to crimes defined in other statutes, and both designate persons who may be punished because of their connection with activities pertaining to such crimes. ▇ In our opinion the same reasoning which precludes the application of section 31 for the purpose of prosecuting a woman as a principal under section 274 likewise precludes the use of section 182 in prosecuting her for conspiracy to violate section 274. Since, as held in the Clapp case, the Legislature has expressed an intent that a woman who consents and voluntarily submits to an abortion is not punishable under section 274, it clearly did not intend that she should be punished for conspiracy to violate that statute. ▇ Although the language of section 182, standing alone, is sufficiently broad to include any agreement to procure an abortion, the provision, like that in section 31, is general and must yield to the specific provision in section 275. Any other construction would mean that the conspiracy law could be used as a device for defeating the legislative intention of imposing a lesser penalty on a woman who violates section 275 than is prescribed for a person convicted under section 274.

There are many cases arising under other statutes in which it has been recognized that a defendant may be liable to prosecution for conspiracy to commit a given crime even though he is incapable of committing the crime itself. (See, e.g., *United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 224-225 [footnote] [60 S.Ct. 811, 84 L.Ed. 1129]; *United States* v. *Rabinowich*, 238 U.S. 78, 86 [35 S.Ct. 682, 59 L.Ed. 1211]; *People* v. *Wood*, 145 Cal. 659, 664-665 [79 P. 367]; see also cases collected in annotations in 131 A.L.R. 1322, 1327-1329; 74 A.L.R. 1110, 1114-1115; 5 A.L.R. 782, 787-791.) ▇ This rule, however, does not apply where the statutes defining the substantive offense disclose an affirmative legislative policy that the conduct of one of the parties involved shall be unpunished. (*Gebardi* v. *United States*, 287 U.S. 112, 121-123 [53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370]; *In re Vince*, 2 N.J. 443 [67 A.2d 141, 145]; see *Pinkerton* v. *United States*, 328 U.S. 640, 643 [66 S.Ct. 1180, 90 L.Ed. 1489]; *State* v. *McLaughlin*, 132 Conn. 325 [44 A.2d 116, 120-121].) Similarly, the rule should not be applied where,

as here, the Legislature singles out one of the parties for special treatment by enacting a statute which deals only with the conduct of that person and provides for a lesser punishment than is given to the other party. In some states it has been held that the extrajudicial statements of a woman who solicits and submits to an abortion are admissible against the person who performs it upon the theory that the woman is guilty of conspiracy, but these cases are not helpful here because they do not discuss or show whether, in those jurisdictions, the woman is subject to prosecution as a principal or as an accomplice of the person who committed the abortion. (See *State* v. *Mattson* 53 N.D. 486 [206 N.W. 778]; *State* v. *Timm*, 244 Wis. 508 [12 N.W.2d 670, 673-674]; *Kraut* v. *State*, 228 Wis. 386 [280 N.W. 327, 332-333].) A few courts have declared that she is guilty of conspiracy even though she cannot be punished as an accomplice. (See *United States* v. *Holte*, 236 U.S. 140, 145 [35 S.Ct. 271, 59 L.Ed. 504]; *Solander* v. *People*, 2 Colo. 48, 62-63; *Johnson* v. *People*, 33 Colo. 224 [80 P. 133, 137-138, 108 Am.St.Rep. 85]; *State* v. *Crofford*, 133 Iowa 478 [110 N.W. 921, 922, 924-925]; *Fields* v. *State*, 107 Neb. 91 [185 N.W. 400, 403].) These cases are not persuasive, however, since they do not discuss the factors which we have considered here and which were noted in *People* v. *Clapp, supra,* 24 Cal.2d 835, 838-839. The Supreme Court of Minnesota, in holding under statutes similar to ours that the woman who submits to an abortion is not an accomplice, has also said that she is not a conspirator. (See *State* v. *Tennyson*, 212 Minn. 158 [2 N.W.2d 833, 837, 139 A.L.R. 987].)

It follows from the foregoing that the four women involved here were not subject to prosecution for conspiracy to violate section 274 and that none of them was an accomplice within the meaning of section 1111. It likewise follows that, since these women were not accomplices, their testimony does not fall within the rule that the testimony of one accomplice cannot corroborate that of another, and, accordingly, the women could properly corroborate any witness who was an accomplice. (*People* v. *Wilson*, 25 Cal.2d 341, 346 [153 P.2d 720]; see *People* v. *Clapp,* 24 Cal.2d 835, 837 [151 P.2d 237].)

A different problem, however, is presented by section 1108 of the Penal Code, which, as we have seen, provides that upon ''a trial for procuring or attempting to pro-

cure an abortion, or aiding or assisting therein," the testimony of the woman upon whom the offense was committed must be corroborated. While it is true that this section does not specifically refer to a conspiracy to procure an abortion, the language is very broad and, in our opinion, should be construed to embrace the crime charged in the present indictment. ■ It is apparent that the purpose of the Legislature was to provide a safeguard against the danger that the testimony of the woman who submitted to and willingly participated in the abortion may be colored in expectation of immunity or may be otherwise untrustworthy. This purpose is just as applicable where the defendant is charged with conspiracy to commit an abortion as it is where he is charged with committing or attempting to commit an abortion, and it would be incongruous to interpret section 1108 as intended to deny the safeguard in one situation but to require it in the other. Moreover, such an interpretation would make it possible for the prosecution to circumvent the purpose of the section in many cases by the simple expedient of charging the defendant with conspiracy rather than with the substantive offense itself.[8]

Defendants did not request an instruction based upon section 1108. ■ In a criminal case, however, the trial judge is required to instruct the jury of his own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence. (*People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367] ; see also *People* v. *Bender,* 27 Cal.2d 164, 176 [163 P.2d 8] ; *People* v. *Warren,* 16 Cal. 2d 103, 116 [104 P.2d 1024] ; *People* v. *Scofield,* 203 Cal. 703, 709 [265 P. 914].) ■ Under this rule it has been held that, in an appropriate case, the jury must be instructed as to sections 1110 and 1111 of the Penal Code, which, like section 1108, provide that the testimony of certain witnesses must be corroborated. (*People* v. *Warren, supra*; *People* v. *Heddens,* 12 Cal.App.2d 245, 247 [55 P.2d 230] ; *People* v. *Curran,* 24 Cal.App.2d 673, 676 [75 P.2d 1090] ; see *People* v. *Putnam, supra,* at pp. 890-891 of 20 Cal.2d.) It follows, therefore, that the trial court erred in failing to give an instruction on its own motion with respect to section 1108.

[8]It may be noted, in connection with this discussion, that since the women who submitted to abortions were not accomplices of defendants, their testimony may properly be corroborated by a witness who was an accomplice. (*People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Clapp,* 24 Cal.2d 835, 837 et seq. [151 P.2d 237].)

 In addition to the four women who submitted to abortions, the mother of one of them likewise testified concerning some of the events which took place in Buffum's office. There is evidence that she was an accomplice within the meaning of section 1111 of the Penal Code, and, therefore, it was error for the court to refuse an instruction that the testimony of an accomplice must be corroborated. The conduct of this witness does not fall within the prohibition of section 275 of the Penal Code, and for this reason the rule of *People* v. *Clapp* discussed above has no application to her and cannot serve to prevent sections 31 and 182 from operating so as to render her liable to prosecution as a principal under section 274 or as a member of a conspiracy to violate that section. (See *People* v. *Wilson*, 25 Cal.2d 341, 346 [153 P.2d 720] [discussing husband who took wife to defendant for abortion].) The witness testified that she accompanied her daughter to Buffum's office, told Buffum that the daughter was pregnant, asked Buffum if he could "help" them, talked to Buffum about whether "it could be done" in Los Angeles County, and asked how much it would cost. During this meeting most of the discussion was between the mother and Buffum, and the daughter said very little. There is no evidence that the mother then knew that Rankin was to take part in performance of the abortion, but the daughter testified that during the conversation between Buffum and the mother, Buffum said: "A man will call you tomorrow." The foregoing testimony is sufficient to show that the mother was an active participant in making arrangements with Buffum for the abortion and that she knew that at least one other man would be involved. It is, of course, unnecessary that each conspirator see the others or know who all the members of the conspiracy are. (*Anderson* v. *Superior Court*, 78 Cal.App.2d 22, 23-25 [177 P.2d 315]; see *Blumenthal* v. *United States*, 332 U.S. 539, 556-557 [68 S.Ct. 248, 92 L.Ed. 154]; *Lefco* v. *United States*, 74 F.2d 66, 68-69.) It is likewise unnecessary that each conspirator participate in the overt acts. (*People* v. *McNamara*, 103 Cal.App.2d 729, 741 [230 P.2d 411]; *People* v. *Garrison*, 80 Cal.App.2d 458, 463 [181 P.2d 738]; *People* v. *Benenato*, 77 Cal.App.2d 350, 356 [175 P.2d 296]; *People* v. *Corica*, 55 Cal.App.2d 130, 135 [130 P.2d 164].) Accordingly, it could be concluded that the mother was a conspirator subject to prosecution for the offense charged in the indictment and therefore was an accomplice within the meaning of section 1111.

Do the Errors Require a Reversal of the Judgments?

The only basis upon which the judgments could be affirmed is that there was a conspiracy to violate the law of California by performing abortions in this state, and, as we have seen, there is evidence which might, under proper instructions, support convictions on this theory. However, the case apparently was tried on the theory that defendants could be convicted upon a showing that they agreed to and did transport the women from California to Mexico for the purpose of having abortions performed in that country. There is ample evidence that this was the plan agreed and acted upon by defendants, but our statutes do not provide a punishment for such conduct. The court erred in refusing to instruct the jury on this subject and in receiving proof of the law of Mexico. These errors may well have confused the jurors and led them to believe that defendants could be convicted if they agreed to perform the operations in Mexico or if they conspired to violate the law of that country instead of section 274 of the Penal Code as charged in the indictment. Further, as we have seen, the court erred in failing to instruct upon the necessity for corroboration. It is clear that without the testimony of the mother and the four other women it would have been difficult, if not impossible to convict defendants, and the jury, if properly instructed, might have disregarded their testimony. (See *People* v. *Wallin*, 32 Cal.2d 803, 809 [197 P.2d 734]; *People* v. *Warren*, 16 Cal. 2d 103, 117-119 [104 P.2d 1024]; *People* v. *Papajohn*, 25 Cal.App.2d 193, 195 [76 P.2d 708]; *People* v. *Coakley*, 108 Cal.App.2d 223, 226-229 [238 P.2d 633].) In our opinion, the cumulative effect of the errors requires reversal of the judgments.

The judgments and the order denying motions for a new trial are reversed.

Edmonds, J., and Traynor, J., concurred.

SPENCE, J.—I reluctantly concur in the main conclusions of the Chief Justice, and in the reasoning given in support of those conclusions.

My reluctance stems from the fact that the evidence stands practically uncontradicted, and such evidence points unerringly to the existence of a plan entered into by defendants to commit abortions. Assuming the existence of this plan, the

evidence further shows numerous overt acts of defendants done in California in furtherance of the plan. It is not at all clear, however, that this plan contemplated the commission of any abortion in California. It is difficult to escape the logic of the Chief Justice's reasoning that under the present state of the law the conspiracy to ''commit any crime,'' contained in Penal Code, section 182, is confined to a conspiracy to commit a crime in California. The indictment herein was drawn upon that theory as it charged a conspiracy to violate section 274 of the Penal Code, but the trial was conducted upon the assumption that defendants had conspired to commit a crime in Mexico. I therefore concur in the view that the trial court committed prejudicial error in admitting evidence relating to the laws of Mexico and in refusing defendants' requested instructions relating to the inapplicability of such laws to the charge set forth in the indictment.

With respect to the question of the necessity for instructions on the requirement of corroboration, I agree in general with the views expressed by the Chief Justice. The claimed errors are based on the trial court's refusal to give requested instructions under Penal Code, section 1111, and its failure to instruct on its own motion under section 1108 of that code. If these claimed errors stood alone, I do not believe that they should be held to be prejudicial. The four women upon whom the abortions were committed were not accomplices. Therefore, the testimony of each could be used to corroborate the testimony of the mother and of each of the other women. (*People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Kendall,* 111 Cal.App.2d 204, 210 [244 P.2d 418]; *People* v. *Malone,* 82 Cal.App.2d 54, 63 [185 P.2d 870]; *People* v. *Collins,* 80 Cal.App.2d 526, 534 [182 P.2d 585].) Furthermore, there was abundant evidence, apart from that given by the mother and the four women, which corroborated their testimony. As the evidence clearly indicated a plan by defendants to commit abortions either in Mexico or California, there is little likelihood that the jury would have reached a different result in the event that the trial court had given full and correct instructions on corroboration.

However, as the error in admitting the evidence of Mexican law and in refusing to give the proposed instructions on its inapplicability was prejudicial, I feel compelled to join in

the reversal of the judgments and the order denying the motions for new trial.

SCHAUER, J.—I concur in the judgment and in the opinion of Chief Justice Gibson insofar as it holds that the convictions may not be supported on a showing that defendants conspired in California to perform abortions in Mexico, that the trial court erred in admitting proof of the law of Mexico on abortions, that it erred in failing to give the several instructions, or the substance thereof, as requested by defendants, in particular that the court erred in failing to instruct upon the necessity for corroboration whether such instruction was or was not requested, and that the errors require a reversal of the judgment.

I do not agree with, or concur in, any of those portions of the opinion which conclude, or which assertedly lead to the conclusion, that the four women who solicited the performance of abortions upon themselves, and upon which solicitations the claimed abortions were assertedly performed, are not accomplices, within the meaning of section 1111 of the Penal Code, of the persons who assertedly acted on their solicitations, or conspired with them for the alleged objectives, and I do not agree that the testimony of any of such accomplices is competent to corroborate the testimony of any other accomplice or that the competent evidence is sufficient to support a conviction upon the theory that defendants conspired to perform abortions in California.

The portions of the opinion relating to the matter of accomplices and to the law requiring corroboration of accomplices, impress me as evidencing a carefully studied but strained attempt to avoid expressly overruling, and at the same time to avoid so far as possible without completely overruling, the mischief of the cases of *People* v. *Clapp* (1944), 24 Cal.2d 835 [151 P.2d 237], and *People* v. *Wilson* (1944), 25 Cal.2d 341 [153 P.2d 720]. The effect of those cases, so far as they are given any effect, is to overturn the age-old rule of the common law and to repeal *pro tanto* the pertinent statutes of California, requiring corroboration of the testimony of the criminal who seeks to pin guilt upon another (and thereby to reap some personal reward) by testimony that such other person acceded to the request of the witness and joined him or her in committing a crime which was initiated and solicited by the witness.

I had thought that the Clapp and Wilson cases had been substantially overruled, albeit not avowedly, by *People* v. *Lima* (1944), 25 Cal.2d 573, 579 [154 P.2d 698]; *People* v. *Harper* (1945), 25 Cal.2d 862, 877 [156 P.2d 249]; and *People* v. *Wallin* (1948), 32 Cal.2d 803, 808 [197 P.2d 734]. Certainly the three latter cases are substantially inconsistent with the former. In one of the three, *People* v. *Harper*, the court refused to apply the doctrine where its application would have necessitated acquittal of a convicted murderer; in the other two cases the doctrine was so limited by the ''distinguishing'' process as to reduce it substantially to the plane of so-called oriental justice, according to which, it is said, the merits of the individual case alone determine the result. Part of the reasoning in the instant case is inconsistent with the Clapp and Wilson cases and that part is also inconsistent with that portion of the majority opinion in this same case which apparently again gives some effect to the Clapp doctrine. Such, I fear, will ever be our bemusement until the Clapp doctrine—however attractive it may have originally appeared—is finally abandoned.

It is said in this case that ''A different problem [from that presented by section 1111 of the Penal Code], however, is presented by section 1108 of the Penal Code, which . . . provides that upon 'a trial for procuring or attempting to procure an abortion, or aiding or assisting therein,' the testimony of the woman upon whom the offense was committed must be corroborated. While it is true that this section does not specifically refer to a conspiracy to procure an abortion, the language is very broad and, in our opinion, should be construed to embrace the crime charged in the present indictment. It is apparent that the purpose of the Legislature was to provide a safeguard against the danger that the testimony of the woman who submitted to and willingly participated in the abortion may be colored in expectation of immunity or may be otherwise untrustworthy. This purpose is just as applicable where the defendant is charged with conspiracy to commit an abortion as it is where he is charged with committing or attempting to commit an abortion, and it would be incongruous to interpret section 1108 as intended to deny the safeguard in one situation but grant it in the other. Moreover, such an interpretation would make it possible for the prosecution to circumvent the purpose of the section in many cases by the simple expedient of charging

the defendant with conspiracy rather than with the substantive offense itself.''

Except for the bald assertion that ''A different problem . . . is presented by section 1108,'' everything in the above quoted excerpt from the majority opinion is good law, good logic, and good sense, and I concur in it. And it is all as fully applicable in relation to sections 31 and 1111 of the Penal Code as it is to section 1108. Likewise such reasoning, and the sound principles therein stated, are wholly incompatible with the Clapp and Wilson cases. I think that the cause of justice, and of clarity in the law, would be better served by complete abandonment of the split doctrine of the last mentioned cases.

Carter, J., concurred.

SHENK, J.—I dissent.

The evidence is amply sufficient to support the conviction of the defendants. They were charged by indictment with ''conspiracy to violate section 274, Penal Code of the State of California''—the abortion statute. The defendant Buffum was charged with four overt acts committed in Los Angeles County. The defendant Rankin was charged with one overt act committed in Los Angeles County and four in Mexico where the abortions were consummated. These overt acts were established by competent credible evidence and the defendants did not take the stand to refute them or explain away their obvious implications of guilt.

The defendants make two major contentions. First, that the trial court committed prejudicial error in failing to instruct on the necessity of corroboration of the testimony of the women upon whom the surgery was performed. If the prosecution had been for abortions committed in violation of section 274 they would not have been accomplices under the law of this state. Assuming that they were accomplices in this charge of conspiracy under section 182 of the Penal Code, their testimony was corroborated by the statements of defendant Buffum himself and no prejudice, in my opinion, resulted from the failure to instruct on the requirement of corroboration. The defendant Buffum stated to an arresting officer that the surgery was initially intended to be committed ''down that way'' and that he did not understand that they were to be taken to Mexico, until the trip was completed.

Second, the defendants contend that they cannot be prosecuted in California for the commission of a crime in Mexico and that the admission of evidence to show that the Mexican abortion law is the same as the law of California was prejudicial. This contention calls for the application of section 778a of the Penal Code which provides: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state."

The code commissioner's note correctly states the purpose of this section as follows: "The section is designed to provide for the punishment of persons who in this state do an act culminating in the commission of a crime in another [or outside of this] state." The performance of the abortions in Mexico is not questioned. I see no justification for the holding that the acts done in this state, as provided in section 778a, must constitute an attempt to commit the crime in this state. Such a construction makes that section entirely ineffective unless the substantive crime of attempt covered by section 664 of the Penal Code is proved to have been committed within this state. The language of section 778a is not so limited and it should be applied to the facts in this case. The acts done as contemplated by that section were alleged in the indictment and proved. Those acts were followed by the culmination of the commission of the crimes outside of the state. The question of the improper admission of evidence of Mexican law on the subject therefore becomes immaterial in this case. I would affirm the judgments.

Respondent's petition for a rehearing was denied May 14, 1953. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.