Filed 7/17/13  P. v. Jimenez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISRAEL CABRERA JIMENEZ,<br><br>    Defendant and Appellant. | D061695<br><br><br><br>(Super. Ct. No. SCE295504) |


APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Judge.  Affirmed.

David Andreasen for Defendant and Appellant under appointment by the Court of Appeal.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Raquel M. Gonzalez, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Israel Cabrera Jimenez (Cabrera ) of assault by means likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(1), count 2), and battery with serious bodily injury (§ 243, subd. (d), count 3.) It found true two enhancement allegations that in the commission of the assault, Jimenez personally inflicted great bodily injury on the victim, who was not an accomplice (§§ 1192.7, subd. (c)(8); 12022.7, subd. (a).) The court placed Cabrera on probation for three years, and committed him to local custody for 365 days, with credit for a total of 314 days as follows: 210 actual days, and 104 days of conduct credits under section 4019.

Cabrera contends the court erroneously (1) permitted a witness to identify his coparticipant, Alfredoe Inzunza Damian,[2] who had accompanied him during the assault; (2) excluded expert witness testimony regarding witness identification; (3) instructed the jury with CALCRIM No. 315 on how certain the victim was about his identification of Cabrera; and (4) excluded a defense request for an alibi instruction. He further contends (5) there was cumulative error; and (6) the court erroneously denied him additional conduct credits under the most recent amendment to section 4019. We affirm.

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

[2]     Damian pleaded guilty to one count of assault under section 245, subdivision (a)(1), and the court placed him on probation for three years conditioned on his spending 365 days in custody.

2

BACKGROUND

On October 10, 2009, at approximately 1:45 a.m., a female entered a convenience store in Santee, California, and asked the attendant Sidney Leckron, "Where is your bathroom?" Leckron responded, "Next to my bedroom, where is yours?" The female left and reported the exchange to Cabrera and Damian, who in turn confronted and beat Leckron in an incident captured on surveillance video. Leckron suffered a broken nose during the incident, and he could not see out of his left eye for about a week or two afterwards.

After San Diego County Sheriff's Detective Stephen Gray developed leads about Cabrera and Damian as suspects in the crime and obtained photographs of them from available databases, he compared the photographs with the surveillance video. Detective Gray prepared photographic lineups involving both suspects. Leckron viewed a photographic lineup and initially vacillated between two of the photographs before selecting Cabrera's, stating he was 95 percent certain of his identification. Leckron also identified Damian from a photographic lineup. At trial, Leckron identified Cabrera with 100 percent certainty.

Detective Gray showed Cabrera's aunt, Alicia Gutierrez, a still photograph of two males taken from the surveillance video. She identified Cabrera, but not the other male. Cabrera's uncle, Jose Cabrera, identified the two males in the still photograph as Cabrera and Damian, and confirmed both individuals had previously lived at his residence.

Damian's wife, Rocio Inzunza, identified Damian from the still photograph with 100 percent certainty, but did not know the other male's name, although she recognized him as Damian's friend.

*Defense Case*

Jose Cabrera denied that he had previously identified Cabrera and Damian in the photograph with 100 percent certainty, and instead testified he had told the detective he did not recognize them. Cabrera's aunt testified that when she had identified Cabrera in the still photograph with 70 percent certainty, she was specifically referring to his body build, but not to his face. Inzunza also modified her earlier identification of Damian, claiming she was "maybe 20 percent" certain about it.

Cabrera's uncle, Israel Cabrera (Israel), testified that on October 9, 2009, Cabrera slept on a couch next to Israel's bed. A light sleeper, Israel went to bed between 11:30 p.m. and midnight. He did not hear Cabrera get up and leave during the night. When Israel awoke at around 8:45 a.m., Cabrera was asleep on the couch. Mini Vazquez, Israel's neighbor, testified that around 11:30 that night, she heard a noise, and went into Israel's bedroom and saw Cabrera asleep on a couch.

DISCUSSION

I.

Cabrera contends the court violated his state and federal rights to due process by admitting Inzunza's testimony identifying Damian in the still photograph. Cabrera

4

further argues the court abused its discretion by failing to weigh the prejudicial effect of the identification testimony under Evidence Code section 352.[3]

A. *Background*

The People moved in limine to permit Inzunza to testify about her identification of Damian. Cabrera countered that such testimony would raise a prejudicial inference that he and Damian had committed the crimes together. Cabrera's counsel specifically argued: "The problem we are having, your honor, is that with regards to Ms. Inzunza, the ex-wife, to testify, it's based on the photograph that depicts, evidently or allegedly, Mr. Damian at the counter, along with an unidentified individual. It appears to be bootstrapping by way of bringing in the ex-wife in hopes that the jurors will believe that it's [Cabrera]. [¶] And, your, honor, I think it is prejudicial. She will not be able to testify it's [Cabrera]. She will just say, 'that is my husband.' "

The court tentatively granted the People's motion, finding that Inzunza's testimony was relevant because the People had proffered other independent evidence that Cabrera and Damian were friends who had spent time together. The court challenged the veracity of Inzunza's recantation, stating outside of the presence of the jury: "In my personal

---

3      We address by separate order Cabrera's petition for writ of habeas corpus, in which he contends Detective Gray suggestively presented the photographic lineup to the victim instead of using a double blind procedure; the identifications of Damian's photograph by Cabrera's aunt and uncle should have been excluded; and, defense counsel was prejudicially ineffective for failing to move to suppress evidence relating to those identifications. Cabrera also contends in the writ petition that Detective Gray destroyed evidence, and thus Cabrera's trial counsel was ineffective for failing to move for sanctions or dismissal of the charges under *California v. Trombetta* (1984) 467 U.S. 479.

opinion . . . fraud is being attempted upon the court, and I think that Ms. Inzunza, for whatever reason, I am sure she has a good one, is fabricating a story."

B. *Applicable law*

The trial court has the discretion to exclude evidence under Evidence Code section 352 if its probative value is outweighed by the probability of undue prejudice. On appeal, we will not disturb the trial court's ruling unless it abused its discretion. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) The "undue prejudice" referred to in Evidence Code section 352 "is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against defendant" ' without regard to its relevance on material issues." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) Evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. (*People v. Scott* (2011) 52 Cal.4th 452, 491.) In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose. (*Ibid*.)

"A defendant has the general right to offer a defense through the testimony of his or her witnesses [citation], but a state court's application of ordinary rules of evidence—including the rule stated in Evidence Code section 352—generally does not infringe upon this right." (*People v. Cornwell* (2005) 37 Cal.4th 50, 82.)

6

C. *Analysis*

Cabrera relies on inapposite case law stating that evidence of a coparticipant's guilt is inadmissible to prove identity. In those distinguishable cases, the courts held that evidence of the codefendants' guilty pleas prejudicially established guilt by inference, implication, or association. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1294-1295 [holding that in a murder trial, the lower court prejudicially admitted into evidence the separate conviction of a codefendant's wife as an accessory to murder and robbery under Evidence Code section 352]; *People v. Leonard* (1983) 34 Cal.3d 183, 188 ["That some time after the robbery defendant [Leonard] was stopped and arrested with another man [Johnson] who then pleaded guilty to the commission of a robbery earlier in the evening invites an inference of guilt by association—particularly when much of the prosecution testimony at trial was illustrated with diagrams that referred to the assailants as "L" and "J"].)

Here, there was no evidence presented of a codefendant's guilty plea or conviction. Therefore, no such evidence inferred or implied Cabrera's guilt. To the extent Inzunza's identification of Damian implicated Cabrera, there was no prejudice within the meaning of Evidence Code section 352. Even if the court erred in admitting Inzunza's testimony regarding Damian's photograph, any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) Abundant evidence supported Cabrera's conviction. Specifically, based on leads the detectives developed, photographic lineups were prepared permitting Leckron to identify Cabrera and Damian as his attackers. The surveillance video showed the incident. In pretrial interviews,

7

Cabrera's aunt and uncle identified him in a photograph taken from the surveillance video. We also note that the jury, by its verdict, rejected challenges to the identification testimony presented by witnesses who recanted their previous identifications of Cabrera.

II.

Cabrera contends the court's exclusion of proffered testimony from his identification expert violated his federal constitutional right to a meaningful opportunity to present a complete defense. He relies on Evidence Code section 801, subdivision (a) and *People v. McDonald* (1984) 37 Cal.3d 351, 377 (*McDonald*) for his argument that identification expert testimony was admissible. He also relies on *Holmes v. South Carolina* (2006) 547 U.S. 319, and argues a criminal defendant must be allowed a full opportunity to present his defense without exclusion on state evidentiary grounds. We addressed a similar claim in *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 728-730 (*Goodwillie*), and resolved the issue adversely to Cabrera's position.

A. *Background*

The People moved in limine to exclude or limit Dr. Robert Shomer's proffered testimony regarding eyewitness identification, arguing that under *McDonald, supra,* 37 Cal.3d 351, that testimony was needed because the victim's identification of Cabrera was substantially corroborated by other witnesses, including Cabrera's aunt and uncle. The court granted the People's motion, explaining: "Cabrera and Damian . . . lived together, hung out together, have been in the same car together. They are not strangers to one another. . . . [¶] Cabrera is a very distinctive-looking individual. I can say that, because I am a very distinctive-looking individual, and probably have about as much pounds as

8

[he] does. . . . He certainly weighs over 300 pounds, by the looks of him. And if he is somebody who hangs out with Damian, and people who hang around with Damian recognize Cabrera as being the guy that Damian hangs out with—unless there is some evidence that Damian hangs out with two very distinctive-looking guys that look like Cabrera, that sounds like substantial corroboration that Cabrera is the other guy in the photograph at the [convenient store]."

Defense counsel's closing argument primarily challenged testimony identifying Cabrera. To that end, defense counsel claimed the most important evidence was the surveillance video and Leckron's testimony, and he analyzed thoroughly the CALCRIM No. 315 criteria for evaluating testimony of an eyewitness identification of a defendant. He also attacked the photographic lineup, describing it as "extremely suggestive."

B. *Applicable Law*

The California Supreme Court set forth the criteria for reviewing a trial court's decision on the evidentiary issue presented in this claim: "We reiterate that the decision to admit or exclude expert testimony on psychological factors affecting eyewitness identification remains primarily a matter within the trial court's discretion; . . . 'we do not intend to "open the gates" to a flood of expert evidence on the subject.' [Citation.] We expect that such evidence will not often be needed, and in the usual case the appellate court will continue to defer to the trial court's discretion in this matter. Yet deference is not abdication. When an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific

9

psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony." (*McDonald, supra,* 37 Cal.3d at p. 377.) In general, the application of the ordinary rules of evidence does not impermissibly infringe on a defendant's right to present a defense. (*People v. Cunningham* (2001) 25 Cal.4th 926, 998.)

We conclude the court did not abuse its discretion by excluding the expert's testimony. As noted, three different people corroborated the victim's identification of Cabrera. Specifically, Cabrera's aunt and uncle told Detective Gray that the bigger man in the photograph appeared to be Cabrera; further, although Inzunza did not identify Cabrera by name, she recognized him as one of Damian's friends. From cross-examination and closing arguments, the jury was aware of the importance of Cabrera's identification, and if they doubted Cabrera's identity, they could not have convicted him under the instruction they had received with CALCRIM No. 315 regarding the appropriate factors for evaluating an eyewitness' identification of a defendant. On this record, Cabrera received a full and reasonable opportunity to present his defense of mistaken identity.

Cabrera's reliance on *Holmes* is misplaced. In *Holmes*, the United States Supreme Court struck down South Carolina's judicially created rule of evidence that prohibited defense evidence of third party culpability if "the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." (*Holmes v. South Carolina, supra,* 547 U.S. at p. 321.) In other words, a defendant could defend by casting suspicion

10

on another's possible guilt but only if by doing so, his own innocence of the charge was established first. The Supreme Court noted that " '[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.' " (*Id.* at p. 324.) However, that latitude is not so broad as to include restrictions that are " ' "arbitrary" or "disproportionate to the purposes they are designed to serve." ' " (*Ibid.*) Prohibiting the introduction of statements made by another person admitting to the commission of the crime was just such an arbitrary or disproportionate response violative of constitutional guarantees. (*Id.* at pp. 330-331.)

None of the inequities identified in *Holmes* are present here. As noted, the court instructed the jury with CALCRIM No. 315. The jury also heard thorough cross-examination and argument addressing all the reasons the defense found to discredit Cabrera's pretrial identification. Consequently, the court's exclusion of Shomer as an expert on this topic of identification did not result in the total exclusion of testimony challenging identification testimony. More importantly, we specifically rejected this type of attack on the *McDonald* approach to admission of such expert testimony in *Goodwillie, supra,* 147 Cal.App.4th at pp. 728-730. Goodwillie, like Cabrera, relied on mistaken identification as his defense and also desired to present the testimony of an expert on the psychological limitations of such evidence. Relying on *Holmes v. South Carolina, supra,* 547 U.S. 319, Goodwillie argued he was denied his constitutional rights to a full opportunity to defend against the charges. That argument was rejected, based on the same factual reasons we have already noted here. (*Goodwillie,* at pp. 725-730.) This court reviewed the very same factors noted above and concluded an eyewitness

11

identification expert's testimony is not—in quality or quantity—the same evidence as was impermissibly excluded in *Holmes*. Cabrera's challenge to our analysis in *Goodwillie* does not persuade us to reconsider the correctness of that decision.

III.

Cabrera contends the trial court denied him his right to due process under the state and federal Constitutions because in addition to excluding testimony from his identification expert, it instructed the jury with CALCRIM No. 315, which specifically includes this question as one criteria jurors may use in evaluating an eyewitness's credibility: "How certain was the witness when he made an identification?" Cabrera specifically contends, "Because there has been no testimony about the relationship between eyewitness confidence and accuracy, the 'certainty instruction' had the effect of encouraging jurors to equate greater confidence with greater accuracy."

Cabrera has not shown that the instruction had the claimed effect on the jury. CALCRIM No. 315 lists 15 questions for the jury to consider in evaluating identification testimony, without giving preference to any in particular. The final question is open-ended: "Were there any other circumstances affecting the witness's ability to make an accurate identification?" We have no basis for concluding the jury gave the challenged question greater weight than the others. Further, under the more stringent *Chapman* standard of review (*Chapman, supra,* 386 U.S. 18), any error was harmless beyond a reasonable doubt because even absent the challenged statement in CALCRIM No. 315, Cabrera's identification was supported by the detective's investigation and corroborated

12

by different witnesses, as noted, and overwhelming evidence supported Cabrera's conviction.

IV.

Cabrera contends the court prejudicially erred by refusing to instruct the jury with CALCRIM No. 3400 regarding alibi.[4]

A. *Background*

In declining to instruct the jury on alibi, the court observed that notwithstanding evidence showing Cabrera was in Israel's bedroom at 11:30 p.m., the crime occurred more than two hours later, at approximately 1:45 a.m. The court ruled, "I think the state of the evidence does not give rise to an alibi instruction. And to [give it], I think would enhance the state of the evidence on that issue in the jury's mind. And while [defense counsel is] free to argue it, I don't see it as an alibi, because there is no evidence that [Cabrera] was somewhere else . . . at the time of the offense. [¶] I understand there is circumstantial evidence from [which] one might deduce that [Cabrera] was somewhere else, but I don't think that the facts would allow for an alibi instruction."

---

[4] CALCRIM No. 3400 states, in pertinent part: "The People must prove that the defendant committed _____ < insert crime[s] charged >. The defendant contends (he/she) did not commit (this/these) crime(s) and that (he/she) was somewhere else when the crime[s] (was/were) committed. The People must prove that the defendant was present and committed the crime[s] with which (he/she) is charged. The defendant does not need to prove (he/she) was elsewhere at the time of the crime. [¶] If you have a reasonable doubt about whether the defendant was present when the crime was committed, you must find (him/her) not guilty."

B. *Applicable Law*

A jury instruction that pinpoints the crux of a defendant's case or defense, such as alibi, is required to be given on request when substantial evidence supports the theory. (*People v. Jennings* (2010) 50 Cal.4th 616, 674-675; *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Substantial evidence is evidence deserving of consideration by the jury, or evidence a reasonable jury could find persuasive. (*People v. Cunningham, supra,* 25 Cal.4th 926, 1008.) " ' "In evaluating the evidence to determine whether a requested instruction should be given, the trial court should not measure its substantiality by weighing the credibility [of the witnesses] . . . . Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." ' " (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

C. *Analysis*

Even if we were to conclude the court erred, Cabrera correctly concedes that the standard for evaluating reversible error is whether the record establishes a reasonable probability that the error affected the outcome. (*People v. Breverman* (1998) 19 Cal.4th 142, 165, citing *People v.Watson* (1956) 46 Cal.2d 818, 836.) The defense of alibi tends only to negate the prosecution's evidence that a defendant was present at the scene of the crime. (*People v. Freeman* (1978) 22 Cal.3d 434, 438.) That defense cannot " 'be considered by itself, but must be considered in connection with all other evidence in the case.' " (*Ibid*.) Thus, an alibi instruction is unnecessary when the jury has been instructed to consider the evidence as a whole and acquit the defendant if reasonable doubt concerning his guilt has been shown. (See *Ibid.* [given reasonable doubt

14

instruction, "[i]t would have been redundant to have required an additional instruction which directed the jury to acquit if a reasonable doubt existed regarding defendant's presence during the crime"].)

Here, the jury was instructed via CALCRIM No. 220 to acquit Cabrera if it found the prosecution did not establish his guilt beyond a reasonable doubt. Specifically, the instruction stated: "In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." The court also instructed the jury on how to evaluate the witnesses' credibility, and that the testimony of a single witness was sufficient to prove any fact.

In view of these instructions, it would have been redundant to instruct the jury to acquit Cabrera if it believed, based on all the evidence, that there was a reasonable doubt he was present at the scene of the crime. (*People v. Freeman, supra,* 22 Cal.3d at p. 438.) The alibi instruction would have added nothing of substance to the reasonable doubt instruction; it only would have pinpointed or tied defendant's alibi defense to the prosecution's theory that Cabrera committed the charged crimes because he was, in fact, present at the scene. This issue was adequately covered, though more generally so, by the reasonable doubt instruction. Accordingly, it is not reasonably probable that Cabrera would have obtained a more favorable result if CALCRIM No. 3400 had been given. (See, e.g., *People v. Alcala* (1992) 4 Cal.4th 742, 803 [rejecting claim of reversible error based on failure to instruct sua sponte on alibi on grounds jury was instructed sufficiently

15

with other instructions regarding the believability of witnesses (CALJIC No. 2.20), discrepancies in testimony (CALJIC No. 2.21), weighing conflicting testimony (CALJIC No. 2.22), sufficiency of testimony of one witness (CALJIC No. 2.27) and the presumption of innocence/reasonable doubt (CALJIC No. 2.90)].)

## V.

Cabrera contends cumulative error deprived him of his constitutional right to due process. In a close case, the cumulative effect of multiple errors may be sufficient to cause the trial to have been unfair and in turn cause a miscarriage of justice. (*People v. Buffum* (1953) 40 Cal.2d 709, 726, overruled on other grounds by *People v. Morante* (1999) 20 Cal.4th 403, 415.) Multiple errors may require reversal even when the errors, considered individually, would not warrant the same conclusion. (*People v. Jackson* (1991) 235 Cal.App.3d 1670, 1681.) If, in the absence of the cumulative errors, it is reasonably probable that the jury would have reached a result more favorable to a defendant, the decision must be reversed. (*People v. Holt* (1984) 37 Cal.3d 436, 459, superseded by statute on another ground as stated in *People v. Muldrow* (1988) 202 Cal.App.3d 636, 645.) As noted, we have found no prejudicial error, and no errors which, if combined, would cause a miscarriage of justice. Therefore, this claim fails.

## VI.

Cabrera contends that under the most recent amendment to section 4019, he was entitled to receive additional conduct credits in an amount equal to his actual credit ("day-for-day credit"), despite the fact that his crimes were committed before the amendment's effective date: October 1, 2011. He argues that constitutional principles of

16

equal protection apply because classifying inmates based on offense date is not rationally related to the Legislature's purpose of balancing cost savings against public safety associated with his incarceration; therefore, as of October 1, 2011, the amended section 4019 should apply equally to inmates irrespective of the date of their offense. We disagree.

"Pursuant to the October 1, 2011, amendment . . . subdivision (h) of section 4019 presently states: 'The changes to this section . . . shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.' " (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549-1550 (*Ellis*).) Since the Legislature has expressly stated that this latest amendment applies prospectively only, "the October 1, 2011, amendment does not apply retroactively as a matter of statutory construction." (*Ellis,* at p. 1550.)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally." (*People v. Brown* (2012) 54 Cal.4th 314, 328 (*Brown*) [addressing the amendment to section 4019 operative January 25, 2010].) To succeed on a claim under the equal protection clause, Cabrera must first show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199.) For purposes of section 4019 there are two classes of incarcerated inmates: (1) those in jail on or after October 1, 2011, having committed a crime on or after

17

October 1, 2011; and (2) those in jail on or after October 1, 2011, having committed the same offense before October 1, 2011.

In *Brown*, the California Supreme Court held that under general rules of statutory construction, a prior amendment to section 4019 must be read prospectively only, even though the Legislature did not expressly so state, and even though this meant that "prisoners whose custody overlapped the statute's operative date . . . earned credit at two different rates." (*Brown, supra,* 54 Cal.4th at p. 322.) The court reasoned that "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown,* at pp. 328-329; see *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.)

Three appellate courts, relying on *Brown's* reasoning, have rejected the equal protection argument Cabrera raises regarding the October 1, 2011 amendment to section 4019. (*Ellis, supra,* 207 Cal.App.4th at pp. 1551-1553; *People v. Garcia* (2012) 209 Cal.App.4th 530, 541; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395-399.) We agree with these cases. We conclude equal protection principles do not require us to apply the current version of section 4019 to Cabrera and he is not entitled to additional presentence conduct credits.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.